PARKER *v.* DUGGER, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS, ET AL.

No. 89–5961.   Argued November 7, 1990—Decided January 22, 1991

O'CONNOR, J., delivered the opinion of the Court, in which MARSHALL, STEVENS, BLACKMUN, and SOUTER, JJ., joined. WHITE, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA and KENNEDY, JJ., joined, *post*, p. 323.

*Robert J. Link* argued the cause and filed briefs for petitioner.

*Carolyn M. Snurkowski*, Assistant Attorney General of Florida, argued the cause for respondents. With her on the brief were *Robert A. Butterworth*, Attorney General, and *Mark C. Menser*, Assistant Attorney General.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case requires us to determine precisely what effect the Florida courts gave to the evidence petitioner presented in mitigation of his death sentence, and consequently to determine whether his death sentence meets federal constitutional requirements.

I

On the afternoon of February 6, 1982, petitioner Robert Parker and several others set off to recover money owed them for the delivery of illegal drugs. There followed a nightmarish series of events that ended in the early morning hours of February 7 with the deaths of Richard Padgett, Jody Dalton, and Nancy Sheppard.

A Duval County, Florida, grand jury indicted Parker, his former wife Elaine, Tommy Groover, and William Long for the first-degree murders of Padgett, Dalton, and Sheppard. Elaine Parker and Long entered negotiated pleas to second-degree murder. A jury convicted Groover of all three first-degree murders, and the judge sentenced him to death on two counts and life imprisonment on the third.

Parker's jury convicted him of first-degree murder for the killings of Padgett and Sheppard and third-degree murder for the Dalton killing. At the advisory sentencing hearing, Parker presented evidence in mitigation of a death sentence and argued that such evidence also had been presented at trial. The jury found that sufficient aggravating circumstances existed to justify a death sentence as to both the Padgett and Sheppard murders, but that sufficient mitigating circumstances existed that outweighed these aggravating factors. The jury therefore recommended that Parker be sentenced to life imprisonment on both first-degree counts.

The trial judge, who has ultimate sentencing authority under Florida law, accepted the jury's recommendation for the Padgett murder. The judge overrode the jury's recommendation for the Sheppard murder, however, and sentenced Parker to death. The judge's sentencing order explained

that "this Court has carefully studied and considered all the evidence and testimony at trial and at advisory sentence proceedings." App. 47. After reviewing the evidence of the various aggravating and mitigating circumstances defined by Florida statute, the judge found six aggravating circumstances present as to the Sheppard murder and no statutory mitigating circumstances. In the sentencing order, the judge did not discuss evidence of, or reach any explicit conclusions concerning, nonstatutory mitigating evidence. He did conclude that "[t]here are no mitigating circumstances that outweigh the aggravating circumstances in the first count (Padgett murder) and the second count (Sheppard murder)." *Id.*, at 61.

On direct appeal, the Florida Supreme Court affirmed Parker's convictions and sentences. *Parker* v. *State*, 458 So. 2d 750 (1984), cert. denied, 470 U. S. 1088 (1985). The court concluded, however, that there was insufficient evidence to support two of the aggravating circumstances that the trial judge had relied upon in sentencing Parker to death: that the Sheppard murder was "especially heinous, atrocious and cruel," and that the murder was committed during a robbery. 458 So. 2d, at 754. Nonetheless, the court affirmed the death sentence, its entire written analysis consisting of the following:

> "The trial court found no mitigating circumstances to balance against the aggravating factors, of which four were properly applied. In light of these findings the facts suggesting the sentence of death are so clear and convincing that virtually no reasonable person could differ. *Tedder* v. *State*, 322 So. 2d 908 (Fla. 1975). The jury override was proper and the facts of this case clearly place it within the class of homicides for which the death penalty has been found appropriate." *Ibid.*

Parker pursued state collateral review without success, and then filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Flor-

ida. That court denied Parker's petition as to his convictions, but granted the petition as to the imposition of the death penalty. App. 146. The court concluded that the trial judge had found no nonstatutory mitigating circumstances. The court also found that there was sufficient evidence in the record to support a finding of nonstatutory mitigating circumstances, and, in particular, to support the jury's recommendation of a life sentence for the Sheppard murder. Because, under Florida law, a sentencing judge is to override a jury's recommendation of life imprisonment only when "virtually no reasonable person could differ," *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975) *(per curiam)*, the District Court concluded that the failure of the trial judge to find the presence of nonstatutory mitigating circumstances fairly supported by the record rendered the death sentence unconstitutional. App. 139–142. The District Court also speculated that the trial judge might have failed even to *consider* nonstatutory mitigating circumstances, thereby violating the rule of *Hitchcock* v. *Dugger,* 481 U. S. 393 (1987). App. 143. The court ordered the State of Florida to hold a resentencing hearing within 120 days, or to vacate the death sentence and impose a lesser sentence. *Id.*, at 146.

The Court of Appeals for the Eleventh Circuit reversed. 876 F. 2d 1470 (1989). That court agreed with the District Court that there was "copious evidence of nonstatutory mitigating circumstances presented by Parker during the sentencing phase." *Id.*, at 1475, n. 7. As a consequence, however, the Court of Appeals refused to read the trial judge's silence as to nonstatutory mitigating circumstances as an indication that the judge did not consider or find such circumstances: "Under the facts of this case the only reasonable conclusion is that the trial judge found at least some mitigating factors to be present, but also found that they were *outweighed* by the aggravating factors also present. In his sentencing order, the judge wrote that '[t]here are no mitigating circumstances that *outweigh* the aggravating circum-

stances in . . . the second count (Sheppard murder).' (emphasis added)." *Id.*, at 1475. The Court of Appeals found no constitutional error in Parker's convictions or death sentence. We granted certiorari, 497 U. S. 1023 (1990), and now reverse the judgment of the Court of Appeals and remand for further proceedings.

## II

Parker presents several related challenges to his death sentence. The crux of his contentions is that the Florida courts acted in an arbitrary and capricious manner by failing to treat adequately the evidence he presented in mitigation of the sentence. This case is somewhat unusual in that we are required to reconstruct that which we are to review. The trial judge's order imposing the challenged sentence does not state explicitly what effect the judge gave Parker's nonstatutory mitigating evidence. We must first determine what precisely the trial judge found.

A Florida statute defines certain aggravating and mitigating circumstances relevant to the imposition of the death penalty. Fla. Stat. §§ 921.141(5), 921.141(6) (1985 and Supp. 1990). The death penalty may be imposed only where sufficient aggravating circumstances exist that outweigh mitigating circumstances. Fla. Stat. § 921.141(3) (1985). A jury makes an initial sentencing recommendation to the judge; the judge imposes the sentence. §§ 921.141(2), 921.141(3). Both may consider only those aggravating circumstances described by statute. *McCampbell* v. *State*, 421 So. 2d 1072, 1075 (Fla. 1982) *(per curiam)*. In counterbalance, however, they may consider any mitigating evidence, whether or not it goes to a statutory mitigating circumstance. *Jacobs* v. *State*, 396 So. 2d 713, 718 (Fla. 1981) *(per curiam)*. If the jury recommends a life sentence rather than the death penalty, the judge may override that recommendation and impose a sentence of death only where "the facts suggesting a

sentence of death [are] so clear and convincing that virtually no reasonable person could differ." *Tedder, supra,* at 910.

The jury here recommended a life sentence for the Sheppard murder. The trial judge overrode that recommendation. In his sentencing order, the judge described in detail his factfinding as to each of the eight statutory aggravating and seven statutory mitigating circumstances. The judge found six aggravating circumstances present as to the Sheppard murder, and no statutory mitigating circumstances. App. 48–60. The sentencing order makes no specific mention of nonstatutory mitigating circumstances. Under "Findings of the Court," the order states: "There are no mitigating circumstances that outweigh the aggravating circumstances." *Id.,* at 60–61.

What did the trial judge conclude about nonstatutory mitigating evidence? There is no question that Parker presented such evidence. For example, several witnesses at trial, including witnesses for the State, testified that Parker was under the influence of large amounts of alcohol and various drugs, including LSD, during the murders. Tr. 1401–1402, 1497, 1540–1541, 1619, 1738–1739, 1834, 1836, 1880–1881. At the sentencing hearing, Parker's attorney emphasized to the jury that none of Parker's accomplices received a death sentence for the Sheppard murder. Billy Long, who admitted shooting Nancy Sheppard, had been allowed to plead guilty to second-degree murder. *Id.,* at 2366, 2378, 2491–2496. Finally, numerous witnesses testified on Parker's behalf at the sentencing hearing concerning his background and character. Their testimony indicated both a difficult childhood, including an abusive, alcoholic father, and a positive adult relationship with his own children and with his neighbors. *Id.,* at 2322–2360.

We must assume that the trial judge considered all this evidence before passing sentence. For one thing, he said he did. The sentencing order states: "Before imposing sentence, this Court has carefully studied and considered *all the*

*evidence and testimony at trial and at advisory sentence proceedings*, the presentence Investigation Report, the applicable Florida Statutes, the case law, and all other factors touching upon this case." App. 47 (emphasis added). Under both federal and Florida law, the trial judge could not refuse to consider any mitigating evidence. See *Jacobs, supra,* at 718; *Songer* v. *State,* 365 So. 2d 696, 700 (Fla. 1978) *(per curiam),* cert. denied, 441 U. S. 956 (1979); *Eddings* v. *Oklahoma,* 455 U. S. 104 (1982); *Lockett* v. *Ohio,* 438 U. S. 586 (1978) (plurality opinion). In his instructions to the jury concerning its sentencing recommendation, the judge explained that, in addition to the statutory mitigating factors, the jury could consider "[a]ny other aspect of the defendant's character or record, and any other circumstances of the crime." Tr. 2506–2507. Moreover, Parker's nonstatutory mitigating evidence—drug and alcohol intoxication, more lenient sentencing for the perpetrator of the crime, character and background—was of a type that the Florida Supreme Court had in other cases found sufficient to preclude a jury override. See, for example, *Norris* v. *State,* 429 So. 2d 688, 690 (1983) *(per curiam)* (defendant claimed to be intoxicated); *Buckrem* v. *State,* 355 So. 2d 111, 113–114 (1978) (same); *Malloy* v. *State,* 382 So. 2d 1190, 1193 (1979) *(per curiam)* (lesser sentence for triggerman); *McCampbell, supra,* at 1075–1076 (background and character); *Jacobs, supra,* at 718 (same). The trial judge must have at least taken this evidence into account before passing sentence.

We also conclude that the trial judge credited much of this evidence, although he found that it did not outweigh the aggravating circumstances. The judge instructed the jurors at the end of the sentencing hearing that they need be only "reasonably convinced" that a mitigating circumstance exists to consider it established. Tr. 2507; Florida Bar, Florida Standard Jury Instructions in Criminal Cases 81 (1981 ed.). We assume the judge applied the same standard himself. He must, therefore, have found at least some nonstatutory

mitigating circumstances. The evidence of Parker's intoxication at the time of the murders was uncontroverted. There is also no question that Long, despite being the triggerman for the Sheppard murder, received a lighter sentence than Parker. Respondent conceded this fact in oral argument before this Court. See Tr. of Oral Arg. 35. And, as noted, there was extensive evidence going to Parker's personal history and character that might have provided some mitigation.

In addition, every court to have reviewed the record here has determined that the evidence supported a finding of nonstatutory mitigating circumstances. Both the District Court and the Court of Appeals, in reviewing Parker's habeas petition, concluded that there was more than enough evidence in this record to support such a finding. See App. 141–142; 876 F. 2d, at 1475. We agree. We note also that the jury found sufficient mitigating circumstances to outweigh the aggravating circumstances in the Sheppard murder. The Florida Supreme Court did not make its own determination whether the evidence supported a finding of nonstatutory mitigating circumstances. See *Parker*, 458 So. 2d, at 754, quoted *supra*, at 311. To the extent there is ambiguity in the sentencing order, we will not read it to be against the weight of the evidence.

Perhaps the strongest indication that the trial judge found nonstatutory mitigating circumstances is that the judge overrode the jury's sentencing recommendation for the Sheppard murder, but not for the Padgett murder. The jury recommended a life sentence for both murders. The judge explicitly found six aggravating circumstances related to the Sheppard murder and five aggravating circumstances related to the Padgett murder. App. 56–60. The judge found no statutory mitigating circumstances as to either murder. *Id.*, at 48–56. Yet he sentenced Parker to death for the Sheppard murder, but accepted the jury's recommendation as to the Padgett murder. If the judge had found no nonstatutory

mitigating circumstances, he would have had nothing to balance against the aggravating circumstances for either murder, and the judge presumably would have overridden both recommendations.

It must be that the judge sentenced differentially for the two murders because he believed that the evidence in the Sheppard murder was so "clear and convincing that virtually no reasonable person could differ" about the sentence of death, see *Tedder*, 322 So. 2d, at 910, whereas the evidence in the Padgett murder did not meet this test. Perhaps this decision was based solely on the fact that the judge had found six aggravating circumstances in the Sheppard murder but only five in the Padgett murder. Far more likely, however, is that the judge found nonstatutory mitigating circumstances, at least as to the Padgett murder. But, as the nonstatutory mitigating evidence was in general directed to both murders, there is no reason to think the judge did not find mitigation as to both.

The best evidence that the trial judge did *not* find any nonstatutory mitigating circumstances is that the sentencing order contains detailed findings as to statutory mitigating circumstances, but makes no explicit reference to nonstatutory evidence. There is a likely explanation for this fact. By statute, the sentencing judge is required to set forth explicitly his findings as to only the statutory aggravating and mitigating circumstances. Fla. Stat. § 921.141(3) (1985). Florida case law at the time the trial judge entered Parker's sentencing order required no more. See *Mason* v. *State*, 438 So. 2d 374, 380 (Fla. 1983) (trial judge need not expressly address each nonstatutory mitigating circumstance), cert. denied, 465 U. S. 1051 (1984). Only very recently has the Florida Supreme Court established a requirement that a trial court must expressly evaluate in its sentencing order each nonstatutory mitigating circumstance proposed by the defendant. See *Campbell* v. *State*, 571 So. 2d 415 (1990). The absence of a requirement that the sentencing order contain

specific findings as to nonstatutory mitigating circumstances probably explains why the order here discusses only those circumstances categorized by statute. Nonstatutory evidence, precisely because it does not fall into any predefined category, is considerably more difficult to organize into a coherent discussion; even though a more complete explanation is obviously helpful to a reviewing court, from the trial judge's perspective it is simpler merely to conclude, in those cases where it is true, that such evidence taken together does not outweigh the aggravating circumstances. And so the judge did, stating that he found "no mitigating circumstances *that outweigh the aggravating circumstances.*" App. 61 (emphasis added).

In light of the substantial evidence, much of it uncontroverted, favoring mitigation, the differential sentences for the Sheppard and Padgett murders, and the fact that the judge indicated that he found no mitigating circumstances "that outweigh" aggravating circumstances, we must conclude, as did the Court of Appeals, that the trial court found and weighed nonstatutory mitigating circumstances before sentencing Parker to death.

### III

The Florida Supreme Court did not consider the evidence of nonstatutory mitigating circumstances. On direct review of Parker's sentence, the Florida Supreme Court struck two of the aggravating circumstances on which the trial judge had relied. The Supreme Court nonetheless upheld the death sentence because "[t]he trial court found no mitigating circumstances to balance against the aggravating factors." *Parker*, 458 So. 2d, at 754. The Florida Supreme Court erred in its characterization of the trial judge's findings, and consequently erred in its review of Parker's sentence.

As noted, Florida is a weighing State; the death penalty may be imposed only where specified aggravating circumstances outweigh all mitigating circumstances. Fla. Stat. § 921.141(3) (1985); *McCampbell*, 421 So. 2d, at 1075; *Jacobs*,

396 So. 2d, at 718. In a weighing State, when a reviewing court strikes one or more of the aggravating factors on which the sentencer relies, the reviewing court may, consistent with the Constitution, reweigh the remaining evidence or conduct a harmless error analysis. *Clemons* v. *Mississippi*, 494 U. S. 738, 741 (1990). It is unclear what the Florida Supreme Court did here. It certainly did not conduct an independent reweighing of the evidence. In affirming Parker's sentence, the court explicitly relied on what it took to be the trial judge's finding of no mitigating circumstances. *Parker, supra,* at 754. Had it conducted an independent review of the evidence, the court would have had no need for such reliance. More to the point, the Florida Supreme Court has made it clear on several occasions that it does not reweigh the evidence of aggravating and mitigating circumstances. See, *e. g., Hudson* v. *State,* 538 So. 2d 829, 831 *(per curiam)* ("It is not within this Court's province to reweigh or reevaluate the evidence presented as to aggravating or mitigating circumstances"), cert. denied, 493 U. S. 875 (1989); *Brown* v. *Wainwright,* 392 So. 2d 1327, 1331–1332 (1981) *(per curiam).*

The Florida Supreme Court may have conducted a harmless error analysis. At the time it heard Parker's appeal, this was its general practice in cases in which it had struck aggravating circumstances and the trial judge had found no mitigating circumstances. See *Sireci* v. *State,* 399 So. 2d 964, 971 (1981), cert. denied, 456 U. S. 984 (1982); *Elledge* v. *State,* 346 So. 2d 998, 1002–1003 (1977). Perhaps the Florida Supreme Court conducted a harmless error analysis here: Believing that the trial judge properly had found four aggravating circumstances, and no mitigating circumstances to weigh against them, the Florida Supreme Court may have determined that elimination of two additional aggravating circumstances would have made no difference to the sentence.

But, as we have explained, the trial judge must have found mitigating circumstances. The Florida Supreme Court's

practice in such cases — where the court strikes one or more aggravating circumstances relied on by the trial judge and mitigating circumstances are present — is to remand for a new sentencing hearing. See *ibid.* See also *Moody* v. *State*, 418 So. 2d 989, 995 (1982). Following *Clemons*, a reviewing court is not compelled to remand. It may instead reweigh the evidence or conduct a harmless error analysis based on what the sentencer actually found. What the Florida Supreme Court could not do, but what it did, was to ignore the evidence of mitigating circumstances in the record and misread the trial judge's findings regarding mitigating circumstances, and affirm the sentence based on a mischaracterization of the trial judge's findings.

In *Wainwright* v. *Goode*, 464 U. S. 78, 83–85 (1983), the Court held that a federal court on habeas review must give deference to a state appellate court's resolution of an ambiguity in a state trial court statement. We did not decide in *Goode* whether the issue resolved by the state appellate court was properly characterized as one of law or of fact. In this case, we conclude that a determination of what the trial judge found is an issue of historical fact. It depends on an examination of the transcript of the trial and sentencing hearing, and the sentencing order. This is not a legal issue; no determination of the legality of Parker's sentence under Florida law necessarily follows from a resolution of the question of what the trial judge found.

Because it is a factual issue, the deference we owe is that designated by 28 U. S. C. § 2254. In ruling on a petition for a writ of habeas corpus, a federal court is not to overturn a factual conclusion of a state court, including a state appellate court, unless the conclusion is not "fairly supported by the record." § 2254(d)(8); *Goode, supra,* at 85. For the reasons stated, we find that the Florida Supreme Court's conclusion that the trial judge found no mitigating circumstances is not fairly supported by the record in this case.

## IV

"If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano* v. *Florida*, 468 U. S. 447, 460 (1984). The Constitution prohibits the arbitrary or irrational imposition of the death penalty. *Id.*, at 466–467. We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally. See, *e. g.*, *Clemons, supra*, at 749 (citing cases); *Gregg* v. *Georgia*, 428 U. S. 153 (1976). We have held specifically that the Florida Supreme Court's system of independent review of death sentences minimizes the risk of constitutional error, and have noted the "crucial protection" afforded by such review in jury override cases. *Dobbert* v. *Florida*, 432 U. S. 282, 295 (1977). See also *Proffitt* v. *Florida*, 428 U. S. 242, 253 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); *Spaziano, supra*, at 465. The Florida Supreme Court did not conduct an independent review here. In fact, there is a sense in which the court did not review Parker's sentence at all.

It cannot be gainsaid that meaningful appellate review requires that the appellate court consider the defendant's actual record. "What is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant* v. *Stephens*, 462 U. S. 862, 879 (1983). See also *Clemons, supra*, at 749, 752; *Barclay* v. *Florida*, 463 U. S. 939, 958 (1983) (plurality opinion). The Florida Supreme Court affirmed Parker's death sentence neither based on a review of the individual record in this case nor in reliance on the trial judge's findings based on that record, but in reliance on some other nonexistent findings.

The jury found sufficient mitigating circumstances to outweigh the aggravating circumstances and recommended that Parker be sentenced to life imprisonment for the Sheppard murder. The trial judge found nonstatutory mitigating circumstances related to the Sheppard murder. The judge also declined to override the jury's recommendation as to the Padgett murder, even though he found five statutory aggravating circumstances and no statutory mitigating circumstances related to that crime. The Florida Supreme Court then struck two of the aggravating circumstances on which the trial judge had relied. On these facts, the Florida Supreme Court's affirmance of Parker's death sentence based on four aggravating circumstances and the trial judge's "finding" of no mitigating circumstances was arbitrary.

This is not simply an error in assessing the mitigating evidence. Had the Florida Supreme Court conducted its own examination of the trial and sentencing hearing records and concluded that there were no mitigating circumstances, a different question would be presented. Similarly, if the trial judge had found no mitigating circumstances and the Florida Supreme Court had relied on that finding, our review would be very different. Cf. *Lewis* v. *Jeffers*, 497 U. S. 764 (1990). But the Florida Supreme Court did not come to its own independent factual conclusion, and it did not rely on what the trial judge actually found; it relied on "findings" of the trial judge that bear no necessary relation to this case. After striking two aggravating circumstances, the Florida Supreme Court affirmed Parker's death sentence without considering the mitigating circumstances. This affirmance was invalid because it deprived Parker of the individualized treatment to which he is entitled under the Constitution. See *Clemons*, 494 U. S., at 752.

## V

We reverse the judgment of the Court of Appeals and remand with instructions to return the case to the District

Court to enter an order directing the State of Florida to initiate appropriate proceedings in state court so that Parker's death sentence may be reconsidered in light of the entire record of his trial and sentencing hearing and the trial judge's findings. The District Court shall give the State a reasonable period of time to initiate such proceedings. We express no opinion as to whether the Florida courts must order a new sentencing hearing.

As to Parker's remaining questions presented to this Court, his petition for a writ of certiorari is dismissed as improvidently granted.

*It is so ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE KENNEDY join, dissenting.

"It is not our function to decide whether we agree with the majority of the advisory jury or with the trial judge and the Florida Supreme Court." *Spaziano* v. *Florida*, 468 U. S. 447, 467 (1984). The Court long ago gave up second-guessing state supreme courts in situations such as the one presented here. Nevertheless, the Court today undertakes and performs that task in a manner that is inconsistent with our precedents and with the Court's role as the final arbiter of federal constitutional issues of great importance. Therefore, I dissent.

The entire weight of the Court's opinion rests on a reconstruction of the record the likes of which has rarely, if ever, been performed before in this Court. Once armed with its dubious reconstruction of the facts, the Court proceeds to determine that the Florida Supreme Court's conclusion that the trial judge found no nonstatutory mitigating circumstances is not "'fairly supported by the record.'" *Ante*, at 320 (quoting 28 U. S. C. § 2254(d)(8)). The Court then relies on that determination to assert that the Florida Supreme Court "did not conduct an independent review here," *ante*, at 321, even though the Court admits that the Florida Supreme Court's review was at least thorough enough to cause it to

strike down two aggravating factors found by the trial judge. *Ante*, at 322. The Court ultimately concludes that Parker was deprived of "meaningful appellate review" which, for reasons not fully explained, apparently entitles him to relief under the Eighth Amendment of the Constitution. As I see it, these actions conflict with two lines of the Court's precedent.

First, the Court's application of the "fairly supported by the record" standard of § 2254(d)(8) is inconsistent with the way that standard has been applied in other cases and gives far too little deference to state courts that are attempting to apply their own law faithfully and responsibly. For example, in *Wainwright* v. *Goode*, 464 U. S. 78 (1983) *(per curiam)*, a Florida case remarkably similar to this one, the Court indicated that § 2254(d)(8) requires federal habeas courts to give considerable deference to factual determinations made by *any* state court. In *Goode*, there was a question whether the trial judge who had sentenced the defendant to death had relied on an aggravating factor that was not proper for him to consider under Florida law. In deciding the defendant's appeal, the Florida Supreme Court concluded that the trial judge had not actually relied on the improper factor. On federal habeas review, a Federal District Court agreed with the Florida Supreme Court but the Court of Appeals reversed the death sentence. This Court, after reviewing the record, determined that, at best, the trial court record was ambiguous on this issue and for that very reason we held that "the Court of Appeals erred in substituting its view of the facts for that of the Florida Supreme Court." 464 U. S., at 85.

There is little if any factual distinction between this case and *Goode*. Here, the trial judge stated that he found "no mitigating circumstances that outweigh the aggravating circumstances." App. 61. The majority apparently seizes upon the ambiguity inherent in the judge's use of the word "that," arguing that what he *must* have meant was that there

were mitigating circumstances but that they did not outweigh the aggravators rather than meaning that no mitigating circumstances existed at all.[1] The Florida Supreme Court obviously interpreted his statement in the latter fashion.

To state the Court's argument is to refute it. It is clear that the trial judge's statement is ambiguous, as was the case in *Goode*. The fact that the Justices of this Court cannot agree as to the meaning of the trial judge's statement is strong evidence that the statement is at least ambiguous. Moreover, it is likely that the judge—in following the statutory requirement that he make the weighing determination in writing, see Fla. Stat. § 921.141(3) (1985)—was simply tracking statutory language which requires him, if he chooses to impose a sentence of death, to find "[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances." § 921.141(3)(b). That statement itself is ambiguous because it does not require the trial court to specify whether mitigating circumstances exist but are outweighed, or whether there simply are no such circumstances. I therefore see no reason to disturb the Florida Supreme Court's conclusion that the trial court found that no nonstatutory mitigating circumstances had been established.

---

[1] Apparently, the Court would agree with the Florida Supreme Court's interpretation of the trial court's order if the judge had simply said that there are "no mitigating circumstances *to* outweigh the aggravating circumstances." Instead of the word "to" he used the word "that" and the Court seizes upon that fact to reach its conclusion that he must have found some mitigating circumstances to exist. *Ante*, at 318. The Court's semantic acrobatics are not well taken. The trial judge's use of the word "that" obviously could mean either that (1) there were no mitigating circumstances at all (and by definition they could not outweigh the aggravating circumstances) or (2) there were mitigating circumstances but they were outweighed. That being so, the statement is obviously ambiguous and the Court's creative reconstruction of the record in its desperate stretch to reverse Parker's sentence is contrary to our cases as well as extremely inappropriate and ill advised.

Our recent decision in *Lewis* v. *Jeffers*, 497 U. S. 764 (1990), confirms that this Court traditionally gives great deference to state-court determinations such as the one at issue here. In *Jeffers*, we rejected the contention that federal courts should second-guess state-court findings regarding the existence of aggravating factors and instead held that the question for federal habeas courts is only whether any rational factfinder could have found the factor to be established. *Id.*, at 780–781. I see no reason to differentiate between state-court conclusions regarding mitigating circumstances as opposed to those regarding aggravating factors. Moreover, as the Court expressly acknowledged in both *Goode* and *Jeffers*, the deferential review that is required does not vary depending on the level at which the findings are made in state court; it is the same whether a trial court or the state supreme court makes the finding. *Goode, supra,* at 85; *Jeffers, supra,* at 783.

Even more troubling in this case is the Court's creation of a new and unexplained "meaningful appellate review" standard for federal courts to apply in habeas proceedings. The Court suggests that the Florida Supreme Court's "error" in "misreading" the trial judge's findings is conclusive evidence that the court did not independently review Parker's claims and that this failure rendered Parker's sentence "arbitrary" in violation of the Eighth Amendment to the Constitution.

This holding rests on a faulty assumption about the legal nature of the Florida Supreme Court's review of the trial court's findings[2] and in any event finds no support in our

---

[2] The Court's holding also rests upon the faulty factual assumption that the Florida Supreme Court never considered Parker's evidence of non-statutory mitigating circumstances. In both his opening brief before that court and in his petition for rehearing, Parker extensively argued that his evidence established the existence of nonstatutory mitigating circumstances. See Brief for Appellant in No. 63,700 (Fla. Sup. Ct.), pp. 73, 77–79; Reply Brief for Appellant 23–25; Petition for Rehearing 1–5. Thus, it is preposterous to conclude that the Florida Supreme Court was unaware of this evidence or that it failed to consider it.

cases. The Court previously has held that a state appellate court's interpretation of a trial court's remarks or a state court's finding that particular aggravating circumstances exist, even if considered a *legal* issue as opposed to a factual determination, is an issue of state law which is essentially unreviewable in federal court. *Goode*, 464 U. S., at 84; *Jeffers, supra*, at 783. It is axiomatic that in general mere errors of state law are not the concern of this Court, *Gryger* v. *Burke*, 334 U. S. 728, 731 (1948); *Barclay* v. *Florida*, 463 U. S. 939 (1983); *Goode, supra*, at 86; *Pulley* v. *Harris*, 465 U. S. 37, 41 (1984); *Jeffers, supra*, at 780, and that the "views of the State's highest court with respect to state law are binding on the federal courts." *Goode, supra*, at 84 (citing cases); *Clemons* v. *Mississippi*, 494 U. S. 738, 747 (1990). The Court today suggests that the Eighth Amendment will have been violated any time a federal court decides that a state appellate court has committed an error of state law in a capital case or has not rigorously followed some state appellate procedure. The Court points to no cases supporting this radical revision of our Eighth Amendment jurisprudence.

Here, the only "error" the Court identifies is the Florida Supreme Court's "misreading" of the trial court's findings. The Court does not conclude that the trial court failed or refused to consider Parker's evidence of nonstatutory mitigating factors.[3] Cf. *Hitchcock* v. *Dugger*, 481 U. S. 393 (1987). Indeed, it notes that "he said he did." *Ante*, at 314. Absent such a conclusion, it is difficult to see how any "error" here could have been of federal constitutional dimensions. The Eighth Amendment "does not, by its terms, regulate the procedures of sentencing as opposed to the substance of punish-

---

[3] This in fact was Parker's initial argument before the Florida Supreme Court. See Brief for Appellant in No. 63,700, p. 82 ("Nowhere in the sentencing order is there any indication that the court considered any nonstatutory mitigating factors"). See also *id.*, at 73, 77–79, 82–83. Therefore, not even Parker interpreted the trial court's findings in the manner the Court now suggests is the only plausible interpretation.

ment." *Walton* v. *Arizona*, 497 U. S. 639, 670 (1990) (SCALIA, J., concurring in part and concurring in judgment). "Thus, the procedural elements of a sentencing scheme come within the prohibition, if at all, only when they are of such a nature as *systematically* to render the infliction of a cruel punishment 'unusual.'" *Ibid.* (emphasis added). Therefore, even were I to accept the Court's dubious reconstruction of the factual record in this case, I see no constitutional infirmity in the Florida Supreme Court's judgment.

Of course, entirely apart from the dubious legal propositions relied upon by the Court today, the Court's house of cards topples if in fact the trial judge's statements can plausibly be interpreted as indicating that he found no nonstatutory mitigating circumstances to exist. In his written sentencing order, the trial judge premised his discussion of aggravating and mitigating circumstances with the following statement:

> "Before imposing sentence, this Court has carefully studied and considered all the evidence and testimony at trial and at advisory sentence proceedings, the presentence Investigation Report, the applicable Florida Statutes, the case law, and all other factors touching upon this case." App. 47.

The trial court ultimately concluded that "[t]here are no mitigating circumstances that outweigh the aggravating circumstances." *Id.*, at 61. The Court concedes that the trial court's prefatory statement indicates that the judge did in fact consider the evidence of nonstatutory mitigating circumstances presented by Parker, *ante*, at 314–315, but nonetheless asserts that his concluding statement *cannot* be interpreted to mean that he did not find any nonstatutory mitigating circumstances to exist. As explained above, the Court—hard as it may try—cannot plausibly escape the fact that the statement is ambiguous. Accordingly, as noted above, under *Wainwright* v. *Goode, supra*, federal courts are

required to defer to the Florida Supreme Court's interpretation of the trial court's findings.

Furthermore, there is nothing implausible about the interpretation the Florida Supreme Court gave to the trial court's order. The Court asserts that the trial judge must have found "drug and alcohol intoxication, more lenient sentencing for the perpetrator of the crime, [and Parker's] character and background," *ante*, at 315, as nonstatutory mitigating circumstances, and that "the strongest indication that the trial judge found nonstatutory mitigating circumstances is that the judge overrode the jury's sentencing recommendation for the Sheppard murder, but not for the Padgett murder." *Ante*, at 316. The latter proposition, according to the Court, flows from the fact that although the mitigating evidence with respect to both murders was the same, the judge overrode only one of the sentences. The Court reasons that if the trial judge had actually found that there were no mitigating circumstances in either case, then he surely would have overridden both life sentences. *Ante*, at 316–317.

This reasoning ignores the differences between the two crimes. The trial court found six aggravating circumstances with respect to the Sheppard murder and five with respect to the Padgett murder. Although superficially that difference may not appear very significant, in reality it is, because the aggravating circumstance that the court found present in the Sheppard murder but not in the Padgett murder was that the Sheppard murder was "committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." App. 57. It cannot be seriously disputed that this was the primary, if not sole, motive for killing Nancy Sheppard. This factor goes to the very nature of the Sheppard murder and readily distinguishes it from the Padgett murder.

Padgett was killed in a dispute over payment for illegal drugs. After Tommy Groover and Parker confronted Padgett about his drug debts, they took him to a junkyard

"where Groover and Padgett engaged in a fist fight." *Id.*, at 40. They then drove Padgett to a deserted area and "Groover shot Padgett to death," *ibid.*, with Parker present. The trial court found that Parker and "Groover toyed with their victim for hours — as a cat with a mouse." *Id.*, at 59. Thus, it is clear that Groover was a willing participant in the Padgett murder and that he alone actually killed the victim.

By contrast, Sheppard, a teenager, was essentially an innocent bystander who had no connection to Parker other than that her boyfriend was Padgett. Parker and his accomplices tricked her into accompanying them to the scene of the Padgett murder where they brutally killed her in a pathetic attempt to avoid detection for the Padgett murder. On Parker's orders, William Long shot Sheppard in the head as she knelt down near Padgett's body. *Id.*, at 58, 59. Parker had threatened to kill Long if he did not shoot Sheppard, see *id.*, at 56, 58, 59, a threat driven home by the fact that Parker had previously been convicted and imprisoned for shooting Long, see Tr. 1257–1259, 1340, 1884, 1888, and Parker himself slit Sheppard's throat to insure that the job was done. App. 58, 59. It is not necessary to resort to the imaginative stretch the Court engages in today to see why the trial court might have chosen to override the jury recommendation for the Sheppard murder but not the Padgett murder.

Likewise, an examination of the record reveals why neither the trial court nor the Florida Supreme Court "must" have found nonstatutory mitigating circumstances sufficiently established to require weighing against the aggravating circumstances. The Court's reliance on the disparity in the sentence Parker's accomplice, Long, received is nothing more than another creative reconstruction of the record. The State's theory at trial was that Long feared Parker and that he shot Sheppard only after Parker threatened to kill him if he did not kill Sheppard. In its written sentencing order, the trial court specifically found that Parker "forced

William Long to shoot Nancy Sheppard," *id.*, at 56, that he made "threats to kill Long," *ibid.*, that he "threatened and forced William Long to shoot Nancy Sheppard," *id.*, at 58, and then Parker "cut her throat and took her ring and necklace," *ibid.*, and finally that Parker "ordered William Long to shoot Nancy or himself be killed," and that after Long shot her, Parker "screamed 'shoot her again, shoot her again.'" *Id.*, at 59. As noted previously, the idea that Parker could effectively threaten Long is made more credible by the fact that Parker had previously been convicted and imprisoned for shooting Long. Tr. 1257–1259, 1340, 1884, 1888. Incredibly, without even suggesting that these findings of the trial court are erroneous, the Court asserts that Long was more culpable with regard to the Sheppard murder than Parker and that his more lenient sentence therefore should be a mitigating circumstance in Parker's case.[4] *Ante*, at 316. Neither the record nor common sense supports that assertion.

The Court also suggests that the trial judge must have found "drug and alcohol intoxication" and Parker's "character and background," *ante*, at 315, as nonstatutory mitigating circumstances. Again, however, the record compels no such conclusion. With respect to the "intoxication" circumstance, all but one of the references the Court makes to the trial transcript involve either inconclusive testimony by various witnesses being questioned by Parker's counsel in an obvious

---

[4] The Court's statement that the State "conceded this fact in oral argument before this Court," *ante*, at 316, is misleading. What the State's counsel said in response to questions regarding the existence of this nonstatutory mitigating circumstance was that different defendants did receive different sentences but the State's counsel ultimately answered that "[t]he trial judge in this case—I think he took it into account and found that it was not a valid nonstatutory mitigating circumstance based on the facts and Mr. Parker's participation in the Nancy Sheppard murder." Tr. of Oral Arg. 36. The State did concede the fact that Long "got a life sentence," *id.*, at 35, but it certainly did not concede, as the Court implies, that the nonstatutory mitigating circumstance had been established.

attempt to establish that Parker was intoxicated on drugs or alcohol, see Tr. 1401–1402, 1497, 1540–1541, 1619, 1738, or the self-serving testimony of Parker himself. See *id.*, at 1834, 1880–1881.

Furthermore, this testimony is not corroborated by any physical or medical evidence, and it is for the most part inconclusive and equivocal. For example, when Long was asked whether Parker and some of his companions were high at the time they went to get Nancy Sheppard, he replied "[a]s far as I know. I didn't ask them but they seemed like they were." *Id.*, at 1402. Denise Long, who was visited by Parker and Tommy Groover after the murders had been committed, was asked whether Parker and Groover were high when she saw them. Her response was "[w]ell, there's a difference in being high and just like you are hung over. They looked like they were just hung over from being high or drunk." *Id.*, at 1619. In fact, the State recalled one witness, Lewis Bradley, who had seen Parker and Groover after the murder and he testified that "they seemed like they had been drinking a couple of beers or something, but they seemed like they had control of theirselves." *Id.*, at 1632.

As counsel for the State urged at oral argument, the trial court reasonably could have concluded that there was insufficient evidence to show that Parker was intoxicated on drugs or alcohol at the time of the crimes. Tr. of Oral Arg. 34. There was testimony suggesting that Parker and his companions had been drinking or had taken some drugs at some point during the time period leading up to the murders, but there was no conclusive evidence that Parker was in fact intoxicated or that his actions were in any way affected by drugs or alcohol.[5] Similarly, the persuasiveness of Parker's

---

[5] It is not insignificant that in the trial court Parker argued the statutory mitigating circumstance that his capacity to appreciate the criminality of his conduct, or to conform his conduct to the requirements of the law, was substantially impaired. Fla. Stat. § 921.141(6)(f) (1985 and Supp. 1990). The basis for this alleged impairment was intoxication on drugs

"character and background" evidence depended entirely upon the credibility of witnesses who had a definite interest in seeing that Parker was not sentenced to death.[6]   I cannot say that the trial judge would be in error if he did not credit these submissions as establishing nonstatutory mitigating circumstances.

Finally, the Court attempts to explain away the trial court's failure to discuss any nonstatutory mitigating circumstances by suggesting that the judge did not discuss such circumstances because he was not required by statute to make written findings regarding them.   *Ante*, at 317.   This is a strange suggestion, particularly in light of the Court's assertion that the judge's statement that "there are no mitigating circumstances that outweigh the aggravating circumstances" means that the judge found nonstatutory mitigating circumstances but determined that they were outweighed.   If that were the case, and the trial court had found nonstatutory mitigating circumstances sufficient to merit "weighing," it

---

and alcohol.   Tr. 2481–2483.   Defense counsel incredibly asserted that Parker "had drunk some *four cases* of beer" the night of the murders and Parker's drunkenness was "why Elaine [Parker's wife] drove."   *Id.*, at 2482 (emphasis added).   With respect to this statutory mitigating circumstance, the trial court found:

"Never, at any time, was it contended that the defendant was insane or incompetent at the time of the crime or at trial—nor was there any evidence or testimony that he was substantially impaired in his ability to appreciate the criminality of his conduct or to conform it to the requirements of the law.

.            .            .            .            .

"The defendant not only appreciated the criminality of his conduct—but acting on that appreciation, he murdered two other persons to prevent disclosure of the first murder.

.            .            .            .            .

"Although the defendant was examined by his private psychiatrist, there was no testimony or evidence that his ability to conform his conduct to the requirements of the law was substantially *or even slightly* impaired." App. 52–53 (emphasis added).   .

[6] Witnesses testifying as to Parker's background and character included his mother, grandmother, sister, and a cousin.

would be most reasonable to expect the judge to discuss those circumstances in the sentencing order, whether or not state law required written findings regarding nonstatutory mitigating circumstances. The most plausible interpretation of the trial court's findings is that the court considered the evidence presented and determined that none of it rose to the level of establishing a nonstatutory mitigating circumstance to weigh against the numerous statutory aggravating circumstances.[7]

I cannot countenance the Court's radical departure from our prior cases and cannot agree with its imaginative reconstruction of the record in this case. Therefore, I dissent and would affirm the judgment of the Court of Appeals.[8]

---

[7] Once it is recognized that the Florida Supreme Court's interpretation of the trial court's findings is plausible and must be deferred to, then that court's action in affirming Parker's death sentence comports with our cases, see *Barclay* v. *Florida*, 463 U. S. 939, 955 (1983), and there is no *Clemons* v. *Mississippi*, 494 U. S. 738 (1990), problem.

[8] Although I would affirm the judgment of the Court of Appeals, I would do so for reasons different than those relied upon by that court.