# SUPREME COURT OF THE UNITED STATES

### GLEN CAMPBELL *v.* OHIO

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
APPEALS OF OHIO, CUYAHOGA COUNTY

No. 17–6232.   Decided March 19, 2018

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

Petitioner Glen Campbell challenges the constitutionality of Ohio Rev. Code Ann. §2953.08(D)(3) (West Supp. 2017), which provides that sentences "imposed for aggravated murder or murder" are "not subject to review." I concur in the denial of certiorari because Campbell failed adequately to present his constitutional arguments to the state courts. I nonetheless write separately because a statute that shields from judicial scrutiny sentences of life without the possibility of parole raises serious constitutional concerns.

In Ohio, after a defendant is found guilty of aggravated murder, the State authorizes a range of penalties, including life in prison with parole eligibility after 20, 25, or 30 years, or life imprisonment without the possibility of parole. See §2929.03(A)(1). Under that scheme, Campbell was sentenced to life imprisonment without the possibility of parole after pleading guilty to aggravated murder. He challenged his sentence on appeal, arguing in part that the trial court failed to balance the aggravating and mitigating factors as required by §2929.12 of the Ohio statute.[1]

---

[1] In making sentencing determinations in felony cases, Ohio provides that courts "shall be guided by the overriding purposes of felony sentencing . . . to protect the public from future crime" and "punish the offender," §2929.11, and "shall consider" certain statutory aggravating and mitigating factors, §2929.12.

The Court of Appeals of Ohio found this argument "unreviewable" under §2953.08(D)(3). App. to Pet. for Cert. A–3. That provision, contained within the appellate review section of the Ohio statute, provides: "A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." §2953.08(D)(3). The court below relied on precedent from the Supreme Court of Ohio, which has held that §2953.08(D)(3) is "unambiguous" and "clearly means what it says: such a sentence cannot be reviewed." *State* v. *Porterfield*, 106 Ohio St. 3d 5, 8, 2005-Ohio-3095, ¶17, 829 N. E. 2d 690, 693.

Trial judges making the determination whether a defendant should be condemned to die in prison have a grave responsibility, and the fact that Ohio has set up a scheme under which those determinations "cannot be reviewed" is deeply concerning. Life without parole "is the second most severe penalty permitted by law." *Harmelin* v. *Michigan*, 501 U. S. 957, 1001 (1991) (KENNEDY, J., concurring in part and concurring in judgment). In recent years this Court has recognized that, although death is different, "life without parole sentences share some characteristics with death sentences that are shared by no other sentences." *Graham* v. *Florida*, 560 U. S. 48, 69 (2010). "Imprisoning an offender until he dies alters the remainder of his life 'by a forfeiture that is irrevocable.'" *Miller* v. *Alabama*, 567 U. S. 460, 474–475 (2012) (quoting *Graham*, 560 U. S., at 69). A life-without-parole sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days." *Id.,* at 70 (internal quotation marks and bracket omitted).

Because of the parallels between a sentence of death and a sentence of life imprisonment without parole, the Court has drawn on certain Eighth Amendment require-

ments developed in the capital sentencing context to inform the life-without-parole sentencing context. For instance, this Court imported the Eighth Amendment requirement "demanding individualized sentencing when imposing the death penalty" into the juvenile conviction context, holding that "a similar rule should apply when a juvenile confronts a sentence of life (and death) in prison." *Miller*, 567 U. S., at 475, 477. The Court also categorically banned life-without-parole sentences for juvenile offenders who did not commit homicide. See *Graham*, 560 U. S., at 82.

The "correspondence" between capital punishment and life sentences, *Miller*, 567 U. S., at 475, might similarly require reconsideration of other sentencing practices in the life-without-parole context. As relevant here, the Eighth Amendment demands that capital sentencing schemes ensure "measured, consistent application and fairness to the accused," *Eddings* v. *Oklahoma*, 455 U. S. 104, 111 (1982), with the purpose of avoiding "the arbitrary or irrational imposition of the death penalty," *Parker* v. *Dugger*, 498 U. S. 308, 321 (1991). To that aim, "this Court has repeatedly emphasized that meaningful appellate review of death sentences promotes reliability and consistency." *Clemons* v. *Mississippi*, 494 U. S. 738, 749 (1990); see also *Parker*, 498 U. S., at 321 ("We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally"); *Gregg* v. *Georgia*, 428 U. S. 153, 195 (1976) (joint opinion of Steward, Powell, and Stevens, JJ.) (noting that "the further safeguard of meaningful appellate review is available to ensure that death sentences are not imposed capriciously or in a freakish manner").

In my view, this jurisprudence provides good reason to question whether §2953.08(D)(3) really "means what it says": that a life-without-parole sentence, no matter how

arbitrarily or irrationally imposed, is shielded from mean-
ingful appellate review. Our Eighth Amendment juris-
prudence developed in the capital context calls into ques-
tion whether a defendant should be condemned to die in
prison without an appellate court having passed on
whether that determination properly took account of his
circumstances, was imposed as a result of bias,[2] or was
otherwise imposed in a "freakish manner." And our juris-
prudence questions whether it is permissible that Camp-
bell must now spend the rest of his days in prison without
ever having had the opportunity to challenge why his trial
judge chose the irrevocability of life without parole over
the hope of freedom after 20, 25, or 30 years. The law,
after all, granted the trial judge the discretion to impose
these lower sentences. See §2929.03(A)(1).

This case did not present either the Ohio courts or this
Court the occasion to decide this important question.[3] I
believe the Ohio courts will be vigilant in considering it in
the appropriate case.

------

[2] Although the State argues that a defendant can present a claim of
bias on state postconviction proceedings, see Brief in Opposition 11,
those claims are limited to claims of "a consistent pattern of disparity
in sentencing by the judge," Ohio Rev. Code Ann. §2953.21(A)(5). The
State does not address how a defendant convicted of aggravated murder
can raise a substantial claim of bias if it is not part of a "consistent
pattern."

[3] Campbell advanced his meaningful-review claim as a due process,
rather than an Eighth Amendment, claim. He also argued that the
Ohio statute violated the Equal Protection Clause.