# SUPREME COURT OF THE UNITED STATES

## LAWRENCE JOSEPH JEFFERSON *v.* STEPHEN UPTON, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–8852.   Decided May 24, 2010

PER CURIAM.

Petitioner Lawrence Jefferson, who has been sentenced to death, claimed in both state and federal courts that his lawyers were constitutionally inadequate because they failed to investigate a traumatic head injury that he suffered as a child. The state court rejected that claim after making a finding that the attorneys were advised by an expert that such investigation was unnecessary. Under the governing federal statute, that factual finding is presumed correct unless any one of eight exceptions applies. See 28 U. S. C. §§2254(d)(1)–(8) (1994 ed.). But the Court of Appeals considered only one of those exceptions (specifically §2254(d)(8)). And on that basis, it considered itself "duty-bound" to accept the state court's finding, and rejected Jefferson's claim. Because the Court of Appeals did not fully consider several remaining potentially applicable exceptions, we vacate its judgment and remand.

I

When Jefferson was a child, he "suffered a serious injury to his head." *Jefferson* v. *Terry,* 490 F. Supp. 2d 1261, 1326 (ND Ga. 2007); see *id.,* at 1320 (quoting Jefferson's mother's testimony that "a car ran over the top of his head" when he was two years old). The accident left his skull swollen and misshapen and his forehead visibly scarred. *Jefferson* v. *Hall,* 570 F. 3d 1283, 1311, 1315, n. 4 (CA11 2009) (Carnes, J., dissenting). During the District Court proceedings below, uncontroverted experts testified

that, as a result of his head injury, Jefferson has "permanent brain damage" that "causes abnormal behavior" over which he "has no or substantially limited control." 490 F. Supp. 2d, at 1321–1322. According to these experts, Jefferson's condition causes "'emotional dullness,'" "'restless or aggressive characteristics,'" "'impulsiveness,'" "'temper outbursts,'" "'markedly diminished impulse control,'" "'impaired social judgment,'" and "'transient outbursts of rage which are totally inconsistent with his normal behavioral pattern.'" *Id.,* at 1322, 1327.

The experts further testified that Jefferson's "'severe cognitive disabilities'" "'profoundly alter'" his "'ability to plan and coordinate his actions, to be aware of the consequences of his behavior, and to engage in premeditated or intentional acts.'" *Id.,* at 1327. But they testified he is neither psychotic nor retarded. *Id.,* at 1319. Thus, they said, to a lay observer or even to a professional psychologist, Jefferson does not outwardly appear mentally impaired. Indeed, according to the experts, "'the behavior that may result from'" his condition "'could, without the administration of proper testing, be mistaken for volitional.'" *Id.,* at 1322.

Jefferson faced a death sentence for killing his coworker while the two men were fishing. *Id.,* at 1271–1272. Prior to trial, he was examined by a psychologist named Dr. Gary Dudley, who prepared a formal report in which he concluded that Jefferson's mental deficiencies do not impair "'his judgment or decision-making capacity.'" 570 F. 3d, at 1294 (quoting report). But Dr. Dudley's report included a caveat: "'One possibility that could not be explored because of [Jefferson's] incarceration has to do with the sequelae,'" *i.e.,* pathologies, related to a "'head injury experienced during childhood.'" *Ibid.* "'In my opinion,'" he wrote, "'it would be worthwhile to conduct neuropsychological evaluation of this individual to rule out an organic etiology,'" *i.e.,* to rule out brain damage. *Ibid.*

Although "it is undisputed that the testing" Dr. Dudley recommended "could have easily been performed," 490 F. Supp. 2d, at 1322, and that Jefferson's attorneys possessed police reports and hospital records recounting his head injury, *id.,* at 1323, the attorneys did not have Jefferson tested. At sentencing, they presented only testimony from two prison guards, who stated that Jefferson was an unproblematic inmate, and from three members of Jefferson's family, who testified that he is a "responsible, generous, gentle, and kind" person and "a good father." 570 F. 3d, at 1290–1291. And while Jefferson's mother briefly mentioned the car accident, "she was not questioned and did not offer any testimony regarding the impact, if any, that the accident had on him." *Id.,* at 1291. Thus, "[a]s far as the jury knew, Jefferson did not suffer from brain damage or neurological impairment; he had no organic disorders"; and "his emotional stability, impulse control, and judgment were perfectly normal." *Id.,* at 1311 (Carnes, J., dissenting).

Jefferson sought habeas relief in state court, arguing that his two trial attorneys unreasonably failed to pursue brain-damage testing. In response, the trial attorneys testified that they did not pursue such testing because, after delivering his formal written report, Dr. Dudley later told them that further investigation "'may be a waste of time because the rest of [his] report'" had "'said that [Jefferson] was non psychotic.'" 570 F. 3d, at 1295 (quoting testimony). Dr. Dudley did not testify in person at the hearing, but he submitted a sworn affidavit denying that he had ever made such statements. He said "it had always been his expert opinion 'that neuropsychological testing was necessary'" and that when he wrote as much in his formal report "he 'meant it.'" *Id.,* at 1312 (Carnes, J., dissenting) (quoting affidavit). He added, "'I never, before or after that report, suggested to [Jefferson's attorneys] that such an evaluation was not necessary or that it

would not be worthwhile.'" *Ibid.;* cf. Pet. for Cert. 17, n. 12.

Jefferson contends, and the State has not disputed, that after the hearing concluded the state-court judge contacted the attorneys for the State *ex parte.* And in a private conversation that included neither Jefferson nor his attorneys, the judge asked the State's attorneys to draft the opinion of the court. See *id.*, at 3, 12. According to Jefferson, no such request was made of him, nor was he informed of the request made to opposing counsel. *Id.,* at 12, n. 8, 13; see also *Jefferson* v. *Zant*, 263 Ga. 316, 431 S. E. 2d 110, 111 (1993) ("Jefferson contends [the order] amounts to no more and no less than a reply brief to which [he] has not had a chance to respond").

The attorneys for the State prepared an opinion finding that "Dr. Dudley led [Jefferson's trial attorneys] to believe that further investigation would simply be a waste of time because Petitioner [i]s not psychotic." *Jefferson* v. *Zant*, Civ. Action No. 87–V–1241 (Super. Ct. Butts Cty., Ga., Oct. 7, 1992), p. 16, App. 4 to Pet. for Cert. 16 (hereinafter State Order); see also *id.,* at 37. The opinion "specifically credits the testimony of [the trial attorneys] with regard to their efforts to investigate Petitioner's mental condition." *Id.,* at 18; see also *id.,* at 36. And relying on these findings, it concludes that Jefferson's attorneys "made a reasonable investigation into [his] mental health" and were thus not ineffective. *Id.,* at 37.

Notably, as the Georgia Supreme Court acknowledged, the State's opinion discusses statements purportedly made on Jefferson's behalf by a witness "who did not testify" or participate in the proceedings. 263 Ga., at 318, 431 S. E. 2d, at 112; see State Order 24–25. Nonetheless, the opinion "was adopted verbatim by the [state] court." 263 Ga., at 316, 431 S. E. 2d, at 111. And while the State Supreme Court recognized that we have "'criticized'" such a practice, it affirmed the judgment. *Id.,* at 317, 320, 431 S. E.

Per Curiam

2d, at 112, 114 (quoting *Anderson* v. *Bessemer City*, 470 U. S. 564, 572 (1985)).

## II

Jefferson next sought federal habeas relief in the District Court. In his opening brief, he argued that "there is no reason under principles of comity or otherwise to give any deference to the findings of the State Habeas Corpus Court." Brief for Petitioner in No. 1:96–CV–989–CC (ND Ga.), Doc. 105, p. 4, and n. 1 (hereinafter District Court Brief). In support of that argument, he claimed that the state court "merely signed an order drafted by the State without revision of a single word," even though the order "described witnesses who never testified." *Ibid.* And he said that such a process "rais[es] serious doubts as to whether [the judge] even read, much less carefully considered, the proposed order submitted by the State." *Ibid.*

The District Court ruled in Jefferson's favor. It noted that under the relevant statute "factual findings of state courts are presumed to be correct unless one of . . . eight enumerated exceptions . . . applies." 490 F. Supp. 2d, at 1280; see also *id.,* at 1280, n. 5 (listing the exceptions). And it acknowledged "the state habeas corpus court's failure to explain the basis" for its credibility findings. *Id.,* at 1324, n. 17. But it accepted Jefferson's claim of ineffective assistance of counsel without disturbing the state court's factual findings because it believed he should prevail even accepting those findings as true. *Id.,* at 1324–1325.

On appeal, Jefferson defended the District Court's judgment primarily on its own terms. But he also argued that the state court's factfinding was "dubious at best" in light of the process that court employed, and that the Court of Appeals therefore "should harbor serious doubts about the findings of fact and credibility determinations in the state court record." Brief for Petitioner/Appellee in No. 07–

12502 (CA11), pp. 31–32, n. 10 (hereinafter Appeals Brief).

A divided Court of Appeals panel reversed, and Jefferson filed this petition for certiorari asking us to review his claim of ineffective assistance of counsel. And, in so doing, he challenges—as he did in the State Supreme Court, the District Court, and the Court of Appeals—"the fact findings of the state court," given what he describes as the deficient procedure employed by that court while reviewing his claim. Pet. for Cert. 11–13, 17, n. 12, 18, n. 13 (recounting "'reason[s] to doubt'" the state court's findings). Cf. *Lebron* v. *National Railroad Passenger Corporation*, 513 U. S. 374, 379 (1995) (stating standard for preserving an issue for review in this Court).

## III

This habeas application was filed prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 and is therefore governed by federal habeas law as it existed prior to that point. *Lindh* v. *Murphy*, 521 U. S. 320, 326–336 (1997). In 1963, we set forth the "appropriate standard" to be applied by a "federal court in habeas corpus" when "the facts" pertinent to a habeas application "are in dispute." *Townsend* v. *Sain*, 372 U. S. 293, 312. We held that when "the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings" the district court "ordinarily should . . . accept the facts as found" by the state-court judge. *Id.,* at 318. However, "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding," we held that the federal court "must hold an evidentiary hearing" to resolve any facts that "are in dispute." *Id.,* at 312. We further "explain[ed] the controlling criteria" by enumerating six circumstances in which such an evidentiary hearing would be required:

> "(1) the merits of the factual dispute were not resolved

in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) *the fact-finding procedure* employed by the state court *was not adequate to afford a full and fair hearing*; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) *for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing*." *Id.,* at 313 (emphasis added).

Three years later, in 1966, Congress enacted an amendment to the federal habeas statute that "was an almost verbatim codification of the standards delineated in *Townsend* v. *Sain*." *Miller* v. *Fenton*, 474 U. S. 104, 111 (1985). That codification read in relevant part as follows:

> "In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination . . . of a factual issue, made by a State court of competent jurisdiction . . . , shall be presumed to be correct, *unless* the applicant shall establish or it shall otherwise appear, or the respondent shall admit—
>
> "(1) that the merits of the factual dispute were not resolved in the State court hearing;
>
> "(2) *that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;*
>
> "(3) that the material facts were not adequately developed at the State court hearing;
>
> "(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
>
> "(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right,

failed to appoint counsel to represent him in the State court proceeding;

"(6) *that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or*

"(7) *that the applicant was otherwise denied due process of law in the State court proceeding;*

"(8) or unless . . . the Federal court on a consideration of [the relevant] part of the record as a whole concludes that such factual determination *is not fairly supported by the record.*" §2254(d) (emphasis added).

As is clear from the statutory text quoted above, and as the District Court correctly stated, if any "one of the eight enumerated exceptions . . . applies" then "the state court's factfinding is not presumed correct." 490 F. Supp. 2d, at 1280; accord, *Miller, supra,* at 105 ("Under 28 U. S. C. §2254(d), state-court findings of fact 'shall be presumed to be correct' in a federal habeas corpus proceeding unless one of eight enumerated exceptions applies"); see also 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §20.2c, pp. 915–918 (5th ed. 2005).

Jefferson has consistently argued that the federal courts "should harbor serious doubts about" and should not "give any deference to" the "findings of fact and credibility determinations" made by the state habeas court because those findings were drafted exclusively by the attorneys for the State pursuant to an *ex parte* request from the state-court judge, who made no such request of Jefferson, failed to notify Jefferson of the request made to opposing counsel, and adopted the State's proposed opinion verbatim even though it recounted evidence from a nonexistent witness. See, *e.g.,* Appeals Brief 32, n. 10; District Court Brief 4, n. 1; Pet. for Cert. 12. These are arguments that the state court's *process* was deficient. In other words, they are arguments that Jefferson "did not receive a full and fair evidentiary hearing in . . . state court." *Town-*

*send, supra,* at 312. Or, to use the statutory language, they are arguments that the state court's "factfinding procedure," "hearing," and "proceeding" were not "full, fair, and adequate." §§2254(d)(2), (6), (7).

But the Court of Appeals did not consider the state court's process when it applied the statutory presumption of correctness. Instead, it invoked Circuit precedent that applied only paragraph (8) of §2254(d), which, codifying the second *Townsend* exception, 372 U. S., at 313, lifts the presumption of correctness for findings that are "not fairly supported by the record." See 570 F. 3d, at 1300 (quoting *Jackson* v. *Herring*, 42 F. 3d 1350, 1366 (CA11 1995), in turn quoting 28 U. S. C. §2254(d)(8)). And even though the Court of Appeals "recognize[d]" that Jefferson had argued that the state court's *process* had produced factual findings that were "'dubious at best,'" and that federal courts should therefore "'harbor serious doubts about'" the state court's "'findings of fact and credibility,'" the Court of Appeals nonetheless held that the state court's findings are "'entitled to a presumption of correctness'" that it was "duty-bound" to apply. 570 F. 3d, at 1304, n. 8 (quoting Appeals Brief 32, n. 10). The Court of Appeals explicitly stated that it considered itself "duty-bound" to defer to the state court's findings because "Jefferson has not argued that any of the state courts' factual findings were '*not fairly supported by the record,*'" a direct reference to §2254(d)(8) and to the second *Townsend* exception. 570 F. 3d, at 1304, n. 8 (emphasis added). And it then concluded: "Based on these factual findings of the state habeas courts—all of which are *fairly supported by the record*—we believe that Jefferson's counsel were reasonable in deciding not to pursue neuropsychological testing." *Id.,* at 1304 (emphasis added).

In our view, the Court of Appeals did not properly consider the legal status of the state court's factual findings. Under *Townsend,* as codified by the governing statute, a

federal court is not "duty-bound" to accept any and all state-court findings that are "fairly supported by the record." Those words come from §2254(d)(8), which is only one of eight enumerated exceptions to the presumption of correctness. But there are seven others, see §§2254(d)(1)–(7), none of which the Court of Appeals considered when addressing Jefferson's claim. To be sure, we have previously stated in cases *applying* §2254(d)(8) that "a federal court" may not overturn a state court's factual conclusion "unless the conclusion is not 'fairly supported by the record.'" *Parker* v. *Dugger*, 498 U. S. 308, 320 (1991) (granting federal habeas relief after rejecting state court's finding under §2254(d)(8)); see also *Demosthenes* v. *Baal*, 495 U. S. 731 (1990) *(per curiam)* (applying §2254(d)(8)); cf. *post,* at 10 (SCALIA, J., dissenting). But in those cases there was no suggestion that any *other* provisions enumerated in §2254(d) were at issue. That is not the case here. In treating §2254(d)(8) as the *exclusive* statutory exception, and by failing to address Jefferson's argument that the state court's *procedures* deprived its findings of deference, the Court of Appeals applied the statute and our precedents incorrectly.

Although we have stated that a court's "verbatim adoption of findings of fact prepared by prevailing parties" should be treated as findings of the court, we have also criticized that practice. *Anderson*, 470 U. S., at 572. And we have not considered the lawfulness of, nor the application of the habeas statute to, the use of such a practice where (1) a judge solicits the proposed findings *ex parte*, (2) does not provide the opposing party an opportunity to criticize the findings or to submit his own, or (3) adopts findings that contain internal evidence suggesting that the judge may not have read them. Cf. *id.,* at 568; Ga. Code of Judicial Conduct, Canon 3(A)(4) (1993) (prohibiting *ex parte* judicial communications).

We decline to determine in the first instance whether

Per Curiam

any of the exceptions enumerated in §§2254(d)(1)–(8) apply in this case, see, *e.g., Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005), especially given that the facts surrounding the state habeas court's process are undeveloped. Respondent has conceded that it drafted the state court's final order at that court's request and that the order was adopted verbatim, 263 Ga., at 317, 431 S. E. 2d, at 111, and has not disputed in this Court that the state court solicited the order "*ex parte* and without prior notice" and "did not seek a proposed order from Petitioner," Pet. for Cert. 12, and n. 8. But the precise nature of what transpired during the state-court proceedings is not fully known. See 263 Ga. at 316–317, 431 S. E. 2d, at 111 (noting dispute as to whether Jefferson "had a chance to respond" to the final order); see also Pet. for Cert. 13.

Accordingly, we believe it necessary for the lower courts to determine on remand whether the state court's factual findings warrant a presumption of correctness, and to conduct any further proceedings as may be appropriate in light of their resolution of that issue. See *Townsend, supra,* at 313–319; *Keeney* v. *Tamayo-Reyes*, 504 U. S. 1 (1992). In so holding, we express no opinion as to whether Jefferson's Sixth Amendment rights were violated assuming the state court's factual findings to be true.

\*  \*  \*

The petition for a writ of certiorari and motion to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## LAWRENCE JOSEPH JEFFERSON *v.* STEPHEN UPTON, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–8852.   Decided May 24, 2010

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

The question presented by Jefferson's petition for writ of certiorari is whether his trial attorneys rendered ineffective assistance of counsel when they declined to pursue further investigation of Jefferson's childhood head injury. In my view the Court should either answer that question or (as I would prefer) deny the petition.  Instead, it summarily vacates the judgment of the Court of Appeals on an altogether different ground that was neither raised nor passed upon below and that is not fairly included within the sole question presented.  To make matters worse, the Court conjures up an "error" with respect to that ground by misquoting and mischaracterizing the Court of Appeals' opinion, *ante*, at 9–10, and by overlooking relevant authority from this Court.  I respectfully dissent.

I

A

The prior version of 28 U. S. C. §2254(d) (1994 ed.) applicable in this case provided that in federal habeas proceedings the factual determinations of a state court "shall be presumed to be correct," unless the applicant proves, the respondent admits, or a federal court determines that one of eight exceptions set forth in §2254(d)(1)–(8) applies.  The Court concludes that the Eleventh Circuit

misapplied that provision and our precedents by treating one of those exceptions, §2254(d)(8), "as the *exclusive* statutory exception" to the presumption of correctness, and by failing to address whether §2254(d)(2), (6), or (7) might also bar application of that presumption.[1]  *Ante*, at 10.

The Court's opinion, however, is the first anyone (including Jefferson) has heard of this argument.  Jefferson's briefs below contain no discussion or even citation of subsection (d)—let alone of paragraphs (2), (6), or (7)—and the courts below understandably never passed upon the application of those provisions.  Under our longstanding practice, that should be the end of the matter.  See, *e.g., Pennsylvania Dept. of Corrections* v. *Yeskey*, 524 U. S. 206, 212–213 (1998).

But the Court insists, *ante*, at 5–6, 8–9, that if we squint at them long enough we can see in Jefferson's briefs below a challenge to the state court's fact-finding process cognizable under §2254(d)(2), (6), and (7).  But the handful of isolated, vague statements it musters (buried in hundreds of pages of briefs) show no such thing.  The Court's only evidence that Jefferson presented the point to the District Court, *ante*, at 5, 8, consists of a single sentence of text (and an accompanying two-sentence footnote) in the "Prior Proceedings" section of his 180-page brief.  Final Evidentiary Brief and Proposed Findings of Fact and Conclusions

---

[1] These four exceptions in 28 U. S. C. §2254(d) (1994 ed.) were:

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

.          .          .          .          .

"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

"(7) that the applicant was otherwise denied due process of law in the State court proceeding;

"(8) or unless . . . the Federal court on a consideration of [the relevant] part of the record as a whole concludes that such factual determination is not fairly supported by the record . . . ."

of Law, Record in No. 1:96–CV–989–CC (ND Ga.), Doc. 105 (hereinafter District Court Brief). The sentence is: "In entering the State Habeas Corpus Order Judge Newton merely signed an order drafted by the State without revision of a single word." *Id.,* at 4. The footnote adds:

> "[T]he order signed by Judge Newton described witnesses who never testified, raising serious doubt as to whether he even read, much less carefully considered, the proposed order submitted by the State. In this circumstance, there is no reason under principles of comity or otherwise to give any deference to the findings of the State Habeas Court, because there was apparently no serious consideration or deliberation of the factual and legal issues raised." *Ibid.,* n. 1.

This passing suggestion that deference would be unwarranted is, to put it mildly, an elliptical way to argue that the state fact-finding procedure was inadequate, §2254(d)(2), that Jefferson was denied a full, fair, and adequate hearing, §2254(d)(6), or that Jefferson was denied due process of law, §2254(d)(7). And it only appeared, I emphasize again, in the "Prior Proceedings" section of the brief. The *argument* section of Jefferson's District Court Brief, consisting of 164 pages and containing separate assignments of error from III to XLIV (44), makes no mention of the ground upon which the Court today relies. And the assignment of error that is the basis for the question presented in Jefferson's petition, VI, *id.,* at 47–80, did not dispute the state courts' factual findings under §2254(d), but only challenged the state courts' legal conclusion that his attorneys' failure to conduct a fuller investigation into the head injury he suffered as a child was not deficient performance under *Strickland* v. *Washington,* 466 U. S. 668 (1984).

Jefferson also did not raise the point in the Eleventh Circuit. His brief to that court acknowledged that the

state courts' "[f]indings of fact and credibility determinations are reviewed for clear error." Brief for Petitioner/Appellee, No. 07–12502, pp. 16–17 (hereinafter Appeals Brief). It declared that "The District Court Correctly Deferred to the Fact Findings of the State Court" in adjudicating his ineffective-assistance-of-counsel claim. *Id.,* at 21 (capitalization and boldface type deleted); see also *id.,* at 29, and n. 7, 31. And it conceded that with respect to the ineffective-assistance claim, "[t]he relevant facts are not in dispute." *Id.,* at 24. Jefferson did characterize the state habeas court's factual findings as generally "dubious" and suggested there were "serious doubts" about them, *id.,* at 32, n. 10. But not once did he argue that the dubiousness of the findings was the consequence of a failure to meet the requirements of §2254(d)(2), (6), or (7)—or even more generally that the findings should not be presumed correct under §2254(d). Instead, he pressed the same argument he made in the District Court: Even if the state courts' factual findings were correct, his trial attorneys rendered ineffective assistance in deciding to forgo further investigation of his childhood head injury. *Id.,* at 31–33, 50–51.

Nor did the courts below pass upon the argument the Court now addresses. The District Court did not dispute the state courts' factual findings. *Jefferson* v. *Terry*, 490 F. Supp. 2d 1261, 1319–1320 (ND Ga. 2007). It accepted those findings as true, including the state habeas court's credibility findings, *id.,* at 1323–1324, and n. 17, but held "as a matter of law" that it was objectively unreasonable for Jefferson's attorneys "not to investigate" further into the effect, if any, of the accident on Jefferson's mental capacity and health, *id.,* at 1324. Concluding that Jefferson was thereby prejudiced, the court ordered a new sentencing hearing. *Id.,* at 1328.

The Court of Appeals disagreed with that determination and reversed, holding that his trial attorneys' performance

was not objectively unreasonable under *Strickland*. *Jefferson* v. *Hall*, 570 F. 3d 1283, 1301–1309 (CA11 2009). That court correctly stated the applicable framework under §2254(d):

> "Pre-AEDPA, questions of law and mixed questions of law and fact resolved by state habeas courts are reviewed *de novo*, while the state courts' factual findings are 'subject to the presumption of correctness.' *Freund v. Butterworth*, 165 F. 3d 839, 861 (11th Cir. 1999). Although these findings may be disregarded *if, for example,* they are not 'fairly supported by the record,' *Jackson v. Herring*, 42 F. 3d 1350, 1366 (11th Cir. 1995) (quoting 28 U. S. C. §2254(d)(8)), this Court has construed the 'presumption of correctness' standard to be the same as the 'clear error' standard of review." *Id.,* at 1300 (emphasis added; footnote omitted).

Confronted with no argument that §2254(d)(1)–(7) applied or that it must disregard the state courts' factual findings, the Court of Appeals understandably did not pass upon those questions.

The Court of Appeals did consider the record on its own, as required by §2254(d)(8), to determine whether the state courts' factual determinations were fairly supported by the record. *Id.,* at 1303–1304, and n. 8. In doing so, the court "specifically note[d] that neither Jefferson nor the district court questioned the state court's factual finding that [the defense's psychiatric expert] led [one of Jefferson's attorney's] to believe that further investigation *would* simply be a waste of time, . . . despite [his attorney's] testimony that [the expert] told him it 'may' be a waste of time." *Id.,* at 1303, n. 8. It added that Jefferson did not "point to any particular finding that was clearly erroneous," *id.,* at 1304, n. 8—applying the same standard Jefferson had proposed in his brief, see *supra*, at 3. Even the dissent agreed that

the court was "obliged to accept" the state courts' credibility determination, despite the "reasons to doubt it." 570 F. 3d, at 1312 (opinion of Carnes, J.). The dissent did not cite §2254(d)(2), (6), or (7), but instead focused on the same question of constitutional law that occupied Jefferson's briefs, the District Court's opinion, and the majority's opinion: whether, accepting the factual findings and credibility determination of the state courts as true, Jefferson's attorneys rendered ineffective assistance of counsel. *That* is only the question that occupied the courts and the parties below.

## B

It is bad enough that the Court decides an issue not raised or resolved in the lower courts. It is much worse that it decides an issue Jefferson has not even asked *us* to address. Under this Court's Rule 14.1(a), "[o]nly the questions set forth in the petition, or fairly included therein, will be considered by the Court." We apply that rule in all but "the most exceptional cases, where reasons of urgency or of economy suggest the need to address the unpresented question under consideration." *Yee* v. *Escondido*, 503 U. S. 519, 535 (1992) (citation and internal quotation marks omitted).

Jefferson's petition for writ of certiorari presents a single question:

"[W]hether the majority opinion, in affording trial counsel's decision to limit the scope of investigation in a death penalty case 'higher-than-strong presumption of reasonableness' *[sic]* conflicts with this Court's precedent as announced in *Williams v. Taylor*, 529 U. S. 362 (2000), *Wiggins v. Smith*, 539 U. S. 510 (2003), *Rompilla v. Beard*, 545 U. S. 374 (2005), and *Porter v. McCollum*, 130 S. Ct. 447 (2009)." Pet. for Cert. i.

This is a straightforward request for error correction on a constitutional claim in light of those four decisions, and neither the request nor those cases have anything to do with the pre-AEDPA version of §2254(d). Nor does that question necessarily encompass whether the Court of Appeals misapplied that version of §2254(d) in determining the deference due to the state courts' factual findings. The statutory question may be "*related* to," and "perhaps *complementary* to the one petitioner presented," but it is not "fairly included therein." *Yee*, *supra*, at 537 (internal quotation marks omitted).

As for the body of Jefferson's petition: Far from invoking §2254(d)'s exceptions to the presumption of correctness to support the Sixth Amendment claim, the petition does not even mention subsection (d), let alone paragraphs (2), (6), or (7). There is *no* argument, *anywhere* in the section entitled "Reasons for Granting the Writ," that the state courts' factual findings are not entitled to a presumption of correctness.

The Court claims, *ante*, at 6, that Jefferson sufficiently presented the statutory issue by his characterizations of the state courts' factual findings in the "Statement of the Case" section of his petition, see Pet. for Cert. 11–13, 17, n. 12, 18, n. 13. Even if that were so, "'the fact that [petitioner] discussed this issue in the text of [his] petition for certiorari does not bring it before us. Rule 14.1(a) requires that a subsidiary question be fairly included in the *question presented* for our review.'" *Wood* v. *Allen*, 558 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 13) (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.*, 510 U. S. 27, 31, n. 5 (1993) *(per curiam)*). But in any event, the cited passages do not remotely present the statutory issue. They contain no argument that §2254(d)'s presumption is inapplicable because of §2254(d)(2), (6), or (7), but merely describe the proceedings below, see Pet. for Cert. 11–13, and assert that there might be reasons to doubt the state-

court findings (but for the §2254(d) presumption), see *id.,* at 17, n. 12, 18, n. 13.

"The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci* v. *Regan*, 714 F. 2d 171, 177 (CADC 1983) (opinion of Scalia, J.). Our refusal to abide by standard rules of appellate practice is unfair to the Eleventh Circuit, whose judgment the Court vacates, and especially to the respondent here, who suffers a loss in this Court without *ever* having an opportunity to address the merits of the statutory question the Court decides.

II

The Court's approach would be objectionable even if it were correct that the Court of Appeals went astray. But it is not. The Court of Appeals did *not* treat §2254(d)(8) as "the *exclusive* statutory exception" to the presumption of correctness. *Ante*, at 10. It is true that the majority's opinion—as well as the dissent's—discussed only §2254(d)(8). But that is because only §2254(d)(8), and not §2254(d)(2), (6), or (7), was ever brought to the court's attention. On the fair reading we owe the Eleventh Circuit's opinion, there simply was no error in its application of §2254(d).

The Court asserts, however, that the Eleventh Circuit ignored the other seven paragraphs in §2254(d) when it "invoked Circuit precedent that applied only paragraph (8) of §2254(d)." *Ante*, at 9. It did nothing of the sort. The Court of Appeals said that a state court's factual findings "may be disregarded *if, for example,* they are not 'fairly supported by the record,' *Jackson v. Herring*, 42 F. 3d 1350, 1366 (11th Cir. 1995) (quoting 28 U. S. C. §2254(d)(8))." 570 F. 3d, at 1300 (emphasis added). The Court of Appeals thus expressly acknowledged that

§2254(d)(8) was *but one example* of the grounds for disregarding a state court's factual findings. And the Circuit precedent it cited, *Jackson* v. *Herring*, similarly did not imply, much less hold, that §2254(d)(8) provided the only grounds for setting aside a state court's factual findings under §2254(d). See 42 F. 3d, at 1366.

Next, the Court states:

> "And even though the Court of Appeals 'recognize[d]' that Jefferson had argued that the state court's *process* had produced factual findings that were '"dubious at best,"' and that federal courts should therefore '"harbor serious doubts about"' the state court's '"findings of fact and credibility,"' the Court of Appeals nonetheless held that the state court's findings are '"entitled to a presumption of correctness"' that it was '"duty-bound"' to apply. 570 F. 3d, at 1304, n. 8 (quoting Appeals Brief 32, n. 10)." *Ante*, at 9.

Again, the Court has plucked isolated language from here and there in the Court of Appeals' opinion, to produce a reading which suggests that the Court of Appeals agreed with, or at least did not contest, Jefferson's claim of "serious doubts." That is not so. In the *first* paragraph of footnote eight of its opinion, the panel reasoned that it was "duty-bound to accept" the state courts' factual findings because it concluded they "are clear, unambiguous, and fairly supported by the record." 570 F. 3d, at 1303–1304, n. 8. That language precedes the panel's analysis—in the *second* paragraph of footnote eight—regarding Jefferson's statements that the findings were "dubious" and raised "serious doubts." The Court omits the panel's *actual* explanation for declining to credit Jefferson's general characterization of the quality of the record, which is: "Jefferson does not point to any particular factual finding that was clearly erroneous, and Jefferson even says in the argument section of his brief that, '[t]he relevant facts are

not in dispute.'" *Id.,* at 1304, n. 8.

By the way, even if the Court of Appeals had carelessly described application of the pre-AEDPA version of §2254(d) in the manner which the Court suggests, that would have been no worse than what we have done. For example, in *Demosthenes* v. *Baal*, 495 U. S. 731, 735 (1990) *(per curiam)*, we stated that a federal court may not overturn a state habeas court's factual determinations "unless it concludes that they are not 'fairly supported by the record.' See 28 U. S. C. §2254(d)(8)." And in *Parker* v. *Dugger*, 498 U. S. 308, 320 (1991), we explained that a federal habeas court "is not to overturn a factual conclusion of a state court, including a state appellate court, unless the conclusion is not 'fairly supported by the record.'"[2]

\*    \*    \*

Generally speaking, we have no power to set aside the duly entered judgment of a lower federal court unless we find it to have been in error. More specifically, except where there has been an intervening legal development (such as a subsequently announced opinion of ours) that

---

[2] The Court attempts to distinguish these two cases on the ground that they contained "no suggestion that any *other* provisions enumerated in §2254(d) were at issue," whereas "[t]hat is not the case here." *Ante*, at 10. That is simply not so. As already noted, there was *no* "suggestion" here (let alone an actual *argument*) that paragraphs (2), (6), or (7) were in issue. And if the Court means no more than that petitioner here made some process-type noises, the same was true—and indeed more true—of *Parker* and *Demosthenes*. In *Parker*, we stated the "crux of [petitioner's] contentions" was that the state courts "fail[ed] to treat adequately" the evidence he presented. 498 U. S., at 313. In *Demosthenes*, the Ninth Circuit had said that the state court's process for determining whether the capital inmate was competent was deficient because "'a full evidentiary hearing on competence should have been held.'" 495 U. S., at 736 (quoting Order in *Baal* v. *Godinez*, No. 90–15716 (CA9, June 2, 1990), p. 5).

might alter the judgment below, we cannot *grant* a petition for certiorari, *vacate* the judgment below, and *remand* the case (GVR) simply to obtain a re-do. *Webster* v. *Cooper*, 558 U. S. ___, ___ (2009) (SCALIA, J., dissenting) (slip op., at 3). Yet today the Court vacates the judgment of the Eleventh Circuit on the basis of an error that court did not commit, with respect to a statutory issue that had never previously been raised, and remands for more extensive consideration of a new argument that *might* affect the judgment. Under the taxonomy of our increasingly unprincipled GVR practice, this creature is of the same genus as the "Summary Remand for a More Extensive Opinion than Petitioner Requested" (SRMEOPR). *Id.,* at ___ (slip op., at 4). But it is a distinctly odious species, deserving of its own name: Summary Remand to Ponder a Point Raised Neither Here nor Below (SRPPRNHB).