FILED
United States Court of Appeals
Tenth Circuit

August 12, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RONALD WATSON LAFFERTY,

    Petitioner - Appellant,

v.

LARRY BENZON, Warden of the Utah
State Prison,

    Respondent - Appellee.

No. 18-4016
(D.C. No. 2:07-CV-00322-DB)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**
_____

Before **BRISCOE**, **HOLMES**, and **CARSON**, Circuit Judges.
_____

Petitioner Ronald Watson Lafferty was convicted in Utah state district court of multiple criminal charges, including two counts of first degree murder, and was sentenced to death. After exhausting his state court remedies, Lafferty sought federal habeas relief by filing a petition in federal district court pursuant to 28 U.S.C. § 2254. The district court denied his petition and also denied him a certificate of appealability (COA). Lafferty has now filed a renewed motion with this court seeking a COA on four claims that were asserted in his federal habeas petition. We deny a COA and dismiss this matter.

# I

## *Factual background*

Lafferty grew up in Orem, Utah and was a member of the Church of Jesus Christ of Latter-day Saints (the LDS Church). During the period between 1982 and 1983, he became increasingly critical of the LDS Church and he was excommunicated in 1983.

The following year, Lafferty's wife Diana filed for and obtained a divorce and moved with their six children to Florida. Lafferty felt his excommunication was unjust and was distraught over the dissolution of his marriage.

Lafferty and some of his brothers organized themselves into what he called the "School of the Prophets." The brothers claimed that they received communications from God and they would meet as a group to discuss these "revelations."

It was during this time that Lafferty first told his brothers that he had received a revelation that his ex-wife Diana had been the wife of the devil in a previous world. Lafferty believed their union angered the devil, who in turn caused him trouble in this world out of jealousy. In the spring of 1984, Lafferty claimed to have received another revelation from God (the "removal revelation") ordering that four people were to be "removed." Among those to be "removed" were his brother Allen's wife Brenda, their fifteen-month-old daughter Erica, Richard Stowe, and Chloe Low.

Prior to this time, Lafferty had expressed negative feelings to other family members and friends about the four persons named in the removal revelation. He believed that all four in some way had either helped his wife obtain a divorce or played a part in his excommunication from the LDS Church.

In conjunction with the removal revelation, Lafferty claimed to have received another revelation on March 13, 1984, commanding that he and the School of the Prophets "consecrate" an "instrument" to be used in the removal of the four named individuals. When he discussed this new revelation, only two of his brothers, Dan and Watson, agreed to such an action; the others involved with the School of the Prophets felt that this and the removal revelation were not of God and disassociated themselves from the revelations. The School of the Prophets disbanded because of disagreement over this issue, but Dan and Lafferty continued in their belief that the revelations needed to be fulfilled.

On July 24, 1984, Lafferty, Dan and two other men, Charles Carnes ("Chip") and Ricky Knapp, drove together to Brenda's apartment. Lafferty and Dan went into the apartment. The other two men stayed in the car. Brenda was beaten, strangled with a vacuum cord, and had her throat slit. Brenda's fifteen-month-old daughter also had her throat slit.

The men next drove to Low's house. After they determined no one was there, the men broke into the house and took numerous items. As they left Low's house, Lafferty began talking about going on to Stowe's home.

After accidentally missing the turnoff to Stowe's home, Dan and Lafferty decided to abandon trying to fulfill the rest of the revelation. They stopped at a service station and then headed toward Wendover. Chip testified at trial that during the drive Lafferty admitted to killing Brenda. Chip also testified that Lafferty thanked Dan for killing the baby.

3

Once in Wendover, the group rented a small kitchenette apartment where they cleaned up, ate, and spent the night. The next night, afraid of what the Lafferty brothers had said they had done, Ricky and Chip quietly left the apartment and drove away in the car. They were arrested in Cheyenne, Wyoming on July 30, 1984. Lafferty and Dan were taken into custody by the FBI in Reno, Nevada, on August 17, 1984.

*Procedural background*

A. *The original state criminal proceedings*

Lafferty was charged in Utah state district court with two counts of first degree murder, two counts of aggravated burglary, and two counts of conspiracy to commit first degree murder. Lafferty's competency to stand trial became a key issue, but the state trial court ultimately found Lafferty competent to stand trial. At trial, Lafferty was convicted by a jury on all counts and sentenced to death. The Utah Supreme Court subsequently affirmed Lafferty's convictions and sentence.

B. *Lafferty's first federal habeas petition*

Lafferty filed a petition for federal habeas relief pursuant to § 2254. The district court denied the petition and Lafferty appealed. This court concluded that the state trial judge had applied the wrong legal standard in determining Lafferty's competency to stand trial. See Lafferty v. Cook, 949 F.2d 1546, 1556 (10th Cir. 1991). This court further concluded that a competency determination could not, as a matter of law, be made on the record that existed, and it also concluded that the passage of time rendered impractical a remand for an after-the-fact competency hearing. Id. In light of these

4

conclusions, this court granted the writ, vacated Lafferty's convictions and sentence, and ordered that the State of Utah was free to retry Lafferty. Id.

*C. The second state criminal proceedings*

The State of Utah charged Lafferty again with two counts each of first degree murder, first degree aggravated burglary, and second degree conspiracy to commit criminal homicide. The case was assigned to a different judge than the one who presided over the first trial. A competency hearing was held in November of 1992 and the state trial court found that Lafferty was not competent to stand trial due to mental illness. Lafferty was returned to the state hospital for treatment. A subsequent competency hearing was held in February 1994 and, at that time, the state trial court found that Lafferty was competent to stand trial.

Due to unrelated delays, the trial did not begin until February of 1996. During the early stages of the trial, Lafferty was removed from the courtroom on several occasions for engaging in verbal and physical outbursts. In light of that behavior, the State filed a motion asking the court to determine whether another competency hearing was required. Lafferty was interviewed by two experts who reached conflicting conclusions about his competency to stand trial. As a result, the state trial court determined that a full competency hearing was necessary. The state trial court requested that the eight expert witnesses who had previously examined Lafferty—four expert witnesses for the State and four expert witnesses for the defense—do so again to determine his current competency.

A competency hearing was held in March 1996. The four expert witnesses for the State all agreed that Lafferty was competent to stand trial. Three of the defense experts

opined that Lafferty was mentally ill and not competent to stand trial. The remaining defense expert opined that further observation was needed to make a competency determination. After considering all of these opinions, the state trial court found that Lafferty was competent to stand trial.

The trial proceeded and, in April 1996, the jury found Lafferty guilty on all counts. Lafferty was sentenced to death for both first-degree murder counts.

Lafferty unsuccessfully challenged his convictions and sentences on both direct appeal and in a state post-conviction proceeding.

*D. Lafferty's second federal habeas petition*

In May 2007, Lafferty initiated these proceedings by filing another petition for federal habeas relief pursuant to § 2254. Lafferty twice amended his petition. The district court ultimately denied federal habeas relief in October 2017.

Lafferty moved to alter or amend the judgment, focusing specifically on the district court's resolution of one of his claims of ineffective assistance of appellate counsel. The district court denied the motion and also declined to issue a COA on any of the claims asserted by Lafferty.

## II

Lafferty has filed a renewed motion with this court seeking a COA on four claims that were asserted in his first amended habeas petition: claims one, two, nine (partial), and twenty-seven.[1] We may issue a COA only if Lafferty makes "a substantial showing

---

[1] Lafferty filed a second amended habeas petition, but it included only one claim—an additional thirty-fifth claim—and Lafferty does not seek a COA on that claim.

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, Lafferty must show that reasonable jurists could differ as to whether these claims should have been resolved differently. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). As we discuss in greater detail below, Lafferty has failed to make this showing with respect to any of the four claims on which he seeks a COA.

*Claim 1 – Did the State of Utah have jurisdiction to retry Lafferty?*

In Claim 1 of his first amended habeas petition, Lafferty argued that the state trial court lacked jurisdiction to retry him. The claim, as argued by Lafferty, hinged on the procedural history of his first federal habeas proceedings. After the federal district court denied Lafferty's first federal habeas petition, Lafferty filed an appeal and also sought and was granted by this court a stay of execution pending appeal. More specifically, on February 12, 1990, this court issued a stay order which granted a stay of Lafferty's execution "pending further order of this court." R., Vol. I at 1031. Nearly two years later, on December 9, 1991, this court issued its opinion granting federal habeas relief in favor of Lafferty, vacating his convictions and sentence, and noting that the State of Utah was free to retry Lafferty. The judgment in the case, which was entered on December 10, 1991, stated, in pertinent part: "The cause is remanded to the United States District Court for the District of Utah for further proceedings in accordance with the opinion of this court." Id. at 1032. On May 26, 1992, this court sent a letter to the federal district court with copies of the Opinion and Judgment. The letter stated that these two documents "constitute the mandate in the subject case" and "[b]y direction of the court, the mandate shall be filed immediately in the records of the trial court." Id. at 1033. On June 1, 1992,

7

the federal district court filed the mandate. Id. at 1034. In July 1992, the State of Utah began the process of retrying Lafferty and the federal district court granted the State's request to release the state court records back to the state trial court in order to prepare for Lafferty's retrial. Lafferty argues, based upon this procedural history, that the state trial court lacked jurisdiction to retry him. According to Lafferty, the federal district court failed to effectuate this court's mandate and that, consequently, this court's original stay of execution issued on February 12, 1990, remained in effect at the time of, and effectively barred, Lafferty's retrial which commenced in April 1996.

Lafferty first raised this claim in a petition for rehearing that he filed with the Utah Supreme Court on September 28, 2007, following its affirmance of the state trial court's denial of Lafferty's petition for post-conviction relief. The Utah Supreme Court summarily denied the rehearing petition without any discussion.

The district court in this habeas action also denied the claim. In doing so, the district court concluded that Lafferty had failed to establish that the Utah Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The district court explained that Lafferty had cited "no Supreme Court case holding that a federal habeas court must transfer jurisdiction of a state criminal case back to the state courts before the State may retry a petitioner who has been granted a new trial." R., Vol. IV at 4275. It also explained that the district court overseeing the first habeas proceedings "did all that the mandate required, which was to file the Tenth Circuit's Opinion and Judgment in the record." Id. at 4276.

8

Lafferty fails to establish that reasonable jurists could differ as to whether this claim should have been resolved in a different manner. Although Lafferty cites to Parker v. Dugger, 498 U.S. 308, 323 (1991), for the proposition that a federal district court is required to enter an order directing the state to initiate appropriate proceedings in state court after the reversal of the denial of federal habeas relief, nothing in Parker holds that a district court must enter a specific type of order when a denial of federal habeas relief is overturned. Further, we reject Lafferty's suggestion that this court's original stay of execution pending appeal remained in effect during his subsequent retrial, thereby rendering those proceedings void. Instead, we conclude that the original stay order expired on its own terms when this court issued its Opinion and Judgment in the first federal habeas proceedings. Thus, we conclude that a COA is not warranted on Claim 1.

*Claim 2 – Did the retrial violate the Double Jeopardy Clause of the Fifth Amendment?*

In Claim 2 of his first amended habeas petition, Lafferty asserted that his retrial violated the Double Jeopardy Clause. In support, Lafferty asserted that "[r]etrial is barred if a conviction is reversed because the evidence was legally insufficient" and "[r]eversal on such grounds is equivalent, for double jeopardy purposes, to a verdict of acquittal." R. Vol. I at 371–372 (citing Burks v. United States, 437 U.S. 1, 16–18 (1978)). He in turn argued that this court, in the first federal habeas proceedings, "vacated [his] original conviction due to an evidentiary equivalent to a verdict of acquittal, as in Burks, rather than a trial error." Id. at 375. Lafferty explained that his "competency claim was intertwined with his claim that the trial court erroneously prevented his attorney from presenting evidence of his mental illness and/or the

9

manslaughter strategy at the first trial." Id. at 376. Thus, Lafferty argued, his "lack of competency prevented his attorney from presenting evidence that would have resulted in an acquittal, or at least a conviction on a lesser offense." Id.

Lafferty first asserted this claim on direct appeal following his retrial, arguing that his retrial violated protections against double jeopardy because the trial court erred by applying the wrong standard for determining competency at his first trial and because the state withheld evidence relevant to the competency issue. The Utah Supreme Court rejected the claim, noting that "[r]etrying a case when a 'trial error' has occurred does not place the defendant in double jeopardy." State v. Lafferty, 20 P.3d 342, 380 (Utah 2001).

The district court in these second federal habeas proceedings likewise rejected the claim. In doing so, the district court stated that it "agree[d] with the Utah Supreme Court that the use of the wrong competency standard was mere trial error and not equivalent to insufficient evidence." R., Vol. IV at 4278.

After examining Lafferty's motion for COA and the record, we conclude that Lafferty has failed to establish that reasonable jurists could differ as to whether the district court should have resolved this claim in a different manner. Simply put, this court did not conclude, in the course of ruling in Lafferty's favor in the first habeas proceeding, that the evidence presented at his first trial was legally insufficient. Rather, as the Utah Supreme Court and the district court correctly noted, this court's ruling focused exclusively on a trial error that was committed by the state trial court, i.e., the use of the wrong competency standard. Finally, even if, as Lafferty now suggests, that trial error precluded his trial counsel in his first trial from presenting evidence relevant to

10

Lafferty's mental illness or a manslaughter strategy, that does not alter the nature of this court's holding in the first habeas proceeding.

*Claim 9 – Ineffective assistance at trial and sentencing*

In Claim 9 of his first amended habeas petition, Lafferty argued, in pertinent part, that his trial counsel was ineffective for failing to (1) conduct an adequate mitigation investigation regarding his family history and background, including his mental health history and his usage of chemical substances, and (2) properly present that mitigating evidence during the penalty phase of trial. Lafferty now seeks a COA on Claim 9.

Lafferty first presented this claim in his petition for state post-conviction relief. The state trial court granted summary judgment in favor of the State on this issue. On appeal, the Utah Supreme Court affirmed the state trial court's decision. See Lafferty v. State, 175 P.3d 530, 536–39 (Utah 2007). More specifically, the Utah Supreme Court concluded that "Lafferty . . . failed to show how [trial] counsel was deficient in his investigation and how that deficiency created prejudice," and that "Lafferty presented no . . . undiscovered exculpatory evidence that would have resulted from a more extensive mitigation investigation." Id. at 537.

The district court in this habeas action concluded that Lafferty had failed to demonstrate that the Utah Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. The district court explained: "Although Lafferty suggests a number of ways that counsel could have improved their performance during the penalty phase, he does not overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" R., IV at

11

4288 (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)). The district court further explained that Lafferty had "failed to demonstrate a reasonable probability 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

Lafferty, in his motion for COA, cites a number of cases that support the general proposition that trial counsel needs to investigate and present relevant mitigating evidence. But, as the district court correctly noted, Lafferty fails to identify any specific evidence that trial counsel should have, but failed to, discover and present.

Lafferty also asserts in his motion, incorrectly, that his "trial counsel's case in mitigation was limited to a simple plea for mercy." COA Mot. at 23. In fact, Lafferty's trial counsel made a number of different arguments in support of mitigation during the penalty phase. For example, she introduced evidence that Lafferty had no significant history of prior criminal activity. She also argued that Lafferty was merely an accomplice in the homicides that Dan committed and that Lafferty's participation was relatively minor. Relatedly, trial counsel asked the jury to consider, when determining Lafferty's sentence, that Lafferty's co-defendant Dan was sentenced only to life in prison. Trial counsel also argued that Lafferty was suffering from mental illness at the time of the homicides, and that this affected his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. In addition, she asked the jury to consider Lafferty's continuing mental illness at the time of trial as a factor that should mitigate his punishment. Finally, trial counsel noted that Lafferty came from and was influenced by a dysfunctional family, including a strict and abusive father.

12

Lafferty devotes much of his COA motion to arguing how his trial counsel could have performed better.  For example, he contends his trial counsel should have either called specific mental health experts to testify again during the penalty phase or, alternatively, more specifically referenced the testimony that these experts presented in the guilt phase.  But, as the district court aptly observed: "Although Lafferty suggests a number of ways that counsel could have improved their performance during the penalty phase, he does not overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  R., Vol. IV at 4288 (quoting Strickland, 466 U.S. at 689).

Moreover, as he did in state court and before the district court, Lafferty fails to show how trial counsel's allegedly deficient performance prejudiced him.  During the guilt phase of the retrial, the jury heard testimony from the expert witnesses regarding Lafferty's mental health.  Later, during the penalty phase of the retrial, the state trial court instructed the jury that it could consider the evidence previously admitted during the guilt phase of the retrial.  Lafferty's counsel referred to that evidence and argued that Lafferty's mental illness was a mitigating factor that should be considered by the jury.  The district court, noting these same facts, concluded that Lafferty had "failed to demonstrate a reasonable probability 'that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  R., Vol. 4 at 4288.  Thus, the district court in turn concluded that the Utah Supreme Court had not "contradicted or unreasonably applied controlling United States Supreme Court precedent when it held that [Lafferty] had not met his burden on the Strickland elements."  Id.

13

In light of the record presented, we are not persuaded that reasonable jurists could differ as to the district court's resolution of this claim. Consequently, we deny a COA on this claim.[2]

*Claim 27 – The state trial court's competency determination*

In Claim 27 of his first amended habeas petition, Lafferty argued, in pertinent part, that the state trial court erred in finding him competent to stand trial. Lafferty now seeks a COA on this claim.

In his direct appeal, Lafferty argued that the opinions of the State's four expert witnesses—all of whom found him competent—were not supported by the evidence and were inconsistent with each other. Lafferty further argued that his own experts—three of whom found him incompetent and one who said he needed more time to make a determination—were consistent in their opinions and were also consistent with the state trial court's 1992 finding that Lafferty was incompetent.

The Utah Supreme Court rejected this claim, holding "that there was ample evidence to support the [state] trial court's finding of competency." Lafferty, 20 P.3d at 359. The Utah Supreme Court explained:

> After considering all evidence presented by the defense, and after the March 14 competency hearing, [the state trial court] handed down a detailed memorandum decision and thorough findings of fact regarding

---

[2] Lafferty argues, in connection with Claim 9, that the district court erred in denying his request for discovery to depose his trial counsel and expansion of the record to add in a declaration from his trial counsel. To the extent that Lafferty seeks a separate COA on these arguments, we deny his request. As the State correctly notes, "there is no room for debate on whether the district court was bound by [Cullen v.] Pinholster[, 563 U.S. 170 (2011)] and that no newly developed evidence would be admissible in the habeas case." State Opposition to COA at 21.

14

defendant's competency to stand trial. Having correctly applied the test for competency as it is set forth in Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam), and reiterated in Lafferty II, 949 F.2d at 1550, and after carefully considering the opinions of each of the eight expert witnesses, the trial court found that defendant was not delusional and did not at the time suffer from a mental illness that would prevent him from rationally participating in his defense. The court found that although defendant attached peculiar labels to his religious and political beliefs, his "ideas were developed through a rationally explained process" and "drawn from his real experiences in a reality based way."

In [its] memorandum decision, [the state trial court] addressed the testimony given by each expert, pointed to each opinion's strengths and weaknesses, and concluded that defendant was competent to stand trial. The court found [the State's experts,] Drs. Gardner, Golding, Cohn, and Wootton[,] to be particularly persuasive. The State's experts supported their conclusions that defendant was competent to stand trial with specific examples drawn from their experiences with and interviews of him. They gave credible and persuasive explanations for defendant's beliefs and demonstrated convincingly how defendant's background and upbringing contributed to his current state. All of these experts testified that defendant was grounded in reality. Dr. Gardner was able to specifically help the court by addressing the competency standard as enunciated [by the Tenth Circuit] in Lafferty II and by providing examples in explaining his determination that defendant was competent. He testified many of defendant's beliefs could be explained by his religious background. He also testified that defendant became angry at times with the trial court or examiners because of specific ideas or expressions he found insulting or upsetting, not because of a mental disorder. Dr. Golding testified that defendant's outbursts in court were voluntary acts intended to disrupt testimony and evidence against him. He testified that defendant was aware of the proceedings against him and demonstrated abilities inconsistent with mental illness. Dr. Cohn testified that defendant demonstrated characteristics that are incompatible with a finding of psychosis and that defendant's beliefs and experiences were based in commonly held beliefs. Finally, Dr. Wootton testified that defendant's beliefs, although extreme, had a basis in his religious upbringing. He testified that defendant's so-called delusional ideas were actually metaphors for rational thought processes. For example, defendant's in-court verbal outbursts, which he termed "reflector shields," were his way to disrupt perceived inaccuracies at trial.

[The state trial court] also stated [its] reasons for giving less credence to witnesses called by the defense. [It] pointed out that Dr.

15

Groesbeck's and Dr. Washburn's opinions, though the most persuasive of the defense's experts, were conclusory and lacked sufficient analysis and detail to support their opinions. "A finder of fact, whether judge or jury, is free to reject diagnoses and conclusions that are not adequately explained." Lafferty I, 749 P.2d at 1245. In addition, [the state trial court] noted that Dr. Heinbecker could not determine whether defendant was malingering to avoid trial or was indeed delusional. He gave even less weight to Dr. Howell who, by his own admission, testified that at previous competency hearings specifically regarding defendant, he had testified and submitted written reports contrary to his own personal analysis and "caved in" to pressure from other examiners.

The [state trial] court also stated its observations of defendant during the pretrial proceedings. [It] indicated that defendant was appropriate, polite, and cooperative during the competency hearings and that he was able to respond appropriately to various situations and events. The [state trial] court noted, "He exhibits interpersonal relatedness, warmth, reason, linear thought, and a lively sense of humor."

Id. (paragraph numbers omitted). Lastly, the Utah Supreme Court stated: "The fact that the findings of [the second trial judge] in the 1996 competency hearing were different from those of [the original trial judge] in the 1992 hearing does not undermine the 1996 competency determination." Id.

The district court in this habeas action concluded, in disposing of Claim 27, that Lafferty had failed to "demonstrate[] that the Utah Supreme Court unreasonably applied established federal law when it rejected his claim that the [state] trial court violated his due process rights when it found him competent to stand trial." R., Vol. IV at 4308. The district court noted, in support, that "Lafferty d[id] not suggest any meaningful reason other than his own expert's [sic] testimony to demonstrate that he was incompetent to stand trial." Id. The district court also noted that the Utah Supreme Court had confirmed that the state trial court employed "the competency standard discussed in Dusky v. United

16

<u>States</u>, 362 U.S. 402 (1960)," and that the state trial court "made its findings only 'after carefully considering the opinions of the eight expert witnesses.'" <u>Id.</u> (quoting <u>Lafferty</u> 20 P.3d at 358). Lastly, the district court determined that "there [wa]s ample evidence to support the [state] trial court's finding that Lafferty was competent to stand trial, and that the State's experts' opinions were entitled to more weight than Lafferty's experts." <u>Id.</u> at 4309. Indeed, the district court noted that the state trial court "issued a 16-page memorandum decision that detailed why the State's experts' testimonies were more persuasive than Lafferty's experts." <u>Id.</u>

Lafferty, in the motion for COA he filed with this court, asserts three unexhausted arguments. To begin with, he complains that the state trial court "relied on an unverifiable theory of delusions propounded by two of the State's experts, which was not in accord with the standard enunciated in the Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV) to find that Lafferty's beliefs developed in a reality-based way and that he was, therefore, not mentally ill and competent to stand trial." COA Mot. at 61. Second, he argues that the state trial court mischaracterized the testimony of Dr. Groesbeck, one of the defense experts. Third, he argues that the opinion of State's expert Dr. Gardner that Lafferty was not mentally ill and had never suffered from symptoms of psychosis was undermined by Dr. Gardner's own prior evaluation and testimony. Because none of these arguments were presented by Lafferty to the Utah Supreme Court on direct appeal, they are unexhausted and not properly before us. <u>See</u> <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971) (noting that the exhaustion requirement requires "that the federal claim must be fairly presented to the state courts").

17

In the remainder of his motion for COA, Lafferty argues that the state trial court failed to (1) note inconsistencies between the testimony of Dr. Gardner and Dr. Cohn, two of the State's expert witnesses, and (2) question the opinion of Dr. Golding, another of the State's expert witnesses, that Lafferty was situationally competent. Lafferty also disputes the state trial court's finding that the State's expert witness opinions were entitled to more weight than the opinions offered by the defense's expert witnesses. None of these arguments, however, persuade us that reasonable jurists could differ as to whether Claim 27 should have been resolved differently by the district court.

We therefore deny Lafferty's request for a COA as to Claim 27.

III

The motion for COA is DENIED and the matter is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

18